**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALE FOSSEN; D AND M FOSSEN,
INC.; LARRY FOSSEN; L AND C
FOSSEN, INC.; MARLOWE FOSSEN; M
AND C FOSSEN, INC.; FOSSEN
BROTHERS FARMS, a Partnership,
                *Plaintiffs-Appellants,*

v.

BLUE CROSS AND BLUE SHIELD OF
MONTANA, INC., a health service
corporation,
                *Defendant-Appellee.*

No. 10-36001

D.C. No.
6:09-cv-00061-CCL

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, Senior District Judge, Presiding

Argued and Submitted
August 4, 2011—Seattle, Washington

Filed October 18, 2011

Before: Mary M. Schroeder and Milan D. Smith, Jr.,
Circuit Judges, and Roger T. Benitez, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

19049

**COUNSEL**

Lawrence A. Anderson (argued), Great Falls, Montana; John M. Morrison (argued), Morrison, Motl & Sherwood, PLLP, Helena, Montana, for the plaintiffs-appellants.

Michael F. McMahon and Bernard F. Hubley, McMahon, Wall & Hubley Law Firm, PLLC, Helena, Montana; Anthony F. Shelley (argued) and Jeffrey M. Hahn, Miller & Chevalier Chartered, Washington, DC, for the defendant-appellee.

Mark G. Arnold and Jeffrey J. Simon, Husch Blackwell LLP, St. Louis, Missouri, for amicus curiae National Association of Insurance Commissioners.

Jesse Laslovich and Christina Lechner Goe, Office of the Commissioner of Securities and Insurance, Montana State Auditor, Helena, Montana, for amicus curiae Monica J. Lindeen, Commissioner of Securities and Insurance, Montana State Auditor.

M. Patricia Smith, Timothy D. Hauser, Elizabeth Hopkins, and Uchenna Evans (argued), United States Department of Labor, Washington, DC, for amicus curiae Hilda L. Solis, Secretary of the United States Department of Labor.

---

**OPINION**

M. SMITH, Circuit Judge:

This appeal presents the question of whether a provision of the federal Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), preempts Montana's "little HIPAA" law, Mont. Code Ann. § 33-22-526(2)(a), for purposes of both conferring federal subject matter jurisdiction and defeating state-law causes of

action on the merits. The federal and state HIPAA provisions at issue prohibit certain health insurers from charging different premiums to "similarly situated" participants on account of a participant's "health status-related factor." 29 U.S.C. § 1182(b)(1); Mont. Code Ann. § 33-22-526(2)(a). We affirm the district court and hold that federal HIPAA preempts the Montana law, both jurisdictionally and on the merits, because Montana's HIPAA provision is identical to, and expressly relies upon, federal law. However, federal law does not preempt a claim for relief under a separate Montana unfair insurance practices statute that bars insurers from engaging in "unfair discrimination" when charging policy premiums to similarly situated individuals. Mont. Code Ann. § 33-18-206(2).

## BACKGROUND

Plaintiffs-Appellants (collectively, Fossens) are three brothers, Dale, Larry, and Marlowe Fossen, their three corporations (which they jointly own with their spouses), and Fossen Brothers Farms (a partnership of the three corporations). In 2004, Fossen Brothers Farms applied to Blue Cross and Blue Shield of Montana (Blue Cross) to obtain health insurance coverage for the Fossen Brothers Farms's three employees. From 2004 through May 2009, Blue Cross provided coverage to Fossen Brothers Farms through the Associated Merchandisers Inc., Health First Plan (Associated Merchandisers Plan), and from June 2009 through the time this lawsuit was filed, Blue Cross provided coverage through the Montana Chamber Choices Group Benefit Plan (Chamber Choices Plan).

In 2006, Blue Cross informed the Fossens that their premium was increasing by over 20%. The Fossens learned that Blue Cross was imposing different increases (and even decreases in some cases) on other plan members. After the Fossens complained to the Montana Insurance Commissioner, Blue Cross reduced the proposed increase to 4%. For the 2008

plan year, however, Blue Cross increased the Fossens' premiums over 40%. The Fossens complained again to the insurance commissioner, but apparently to no avail. They then filed this lawsuit in state court in September 2009.

The Fossens' complaint asserted three substantive causes of action. First, they alleged that Blue Cross's 40% premium increase violated a provision of Montana's "little HIPAA" statute that prohibits "group health plan[s]" (and insurers offering coverage through group health plans) from imposing a "premium or contribution that is greater than the premium or contribution for a similarly situated individual" on account of "any health status-related factor of the individual . . . ." Mont. Code Ann. § 33-22-526(2)(a). Second, the Fossens asserted that Blue Cross's premium increase violated a provision of Montana's Unfair Trade Practices Act, Mont. Code Ann. §§ 33-18-101 *et seq.*, which prohibits insurers from engaging in "any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of disability insurance . . . . ," Mont. Code Ann. § 33-18-206(2); *see also* Mont. Code Ann. § 33-1-207(1) (defining "disability insurance" as including insurance against medical expenses resulting from accident or sickness). Third, the Fossens claimed that the premium increase constituted a breach of their contract with Blue Cross, which allegedly incorporated by reference both the Montana HIPAA provision and the unfair practices provision.[1] The complaint sought two forms of relief—declaratory relief that Blue Cross violated the law and restitutionary relief through a return of overcharged premiums—and sought certification as a class action.

Blue Cross timely removed the complaint to federal court,

---

[1]The complaint also mentioned, in passing, Montana Code Annotated § 33-22-1809. However, the Fossens' briefs do not discuss this statute, so we do not consider it here.

asserting that the Fossens' little HIPAA claim was completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat. 829. Federal HIPAA, which is part of ERISA (as amended), contains a provision similar to the Montana HIPAA statute raised in the complaint. As with the Montana HIPAA statute, federal HIPAA prohibits "group health plan[s]" (and insurers offering coverage through group health plans) from charging different "premium[s] or contribution[s]" to "similarly situated individual[s]" on account of "any health status-related factor in relation to the individual[s] . . . ." 29 U.S.C. § 1182(b)(1).[2] Blue Cross argued that ERISA's "complete preemption" doctrine, as articulated in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 66-67 (1987), and subsequent cases, conferred federal jurisdiction over the Fossens' nominal state-law claims. The district court agreed with Blue Cross, and denied the Fossens' motion to remand. The court then granted Blue Cross's motion for summary judgment. The court noted that all of the Fossens' claims were premised on an underlying violation of federal HIPAA, and, finding no violation of that statute, the court held that the Fossens' claims failed as a matter of law. The court also declined to allow the Fossens to amend their complaint to state a breach of contract theory (first argued in the Fossens' summary judgment briefs) premised on Blue Cross's alleged promise not to increase their premiums by a greater amount than any other members of the Associated Merchandisers Plan. The Fossens timely appealed the district court's decision.

---

[2]Both state and federal law define "health status-related factor" as including "Health status," "Medical condition (including both physical and mental illnesses)," "Claims experience," "Receipt of health care," "Medical history," "Genetic information," "Evidence of insurability (including conditions arising out of acts of domestic violence)," and "Disability." 29 U.S.C. § 1182(a)(1); *see also id.* § 1191b(d)(2); Mont. Code Ann. § 33-22-526(1)(a).

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the district court's final judgment. 28 U.S.C. § 1291. We review the district court's exercise of subject matter jurisdiction de novo, placing the burden "on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009). We review de novo the district court's grant of Blue Cross's motion for summary judgment, and examine the evidence in a light most favorable to the Fossens. *FTC v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009). We review the district court's denial of leave to amend the complaint for abuse of discretion. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 949 (9th Cir. 2006).

## DISCUSSION

### I.   ERISA Preemption

"There are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in [ERISA § 502(a),] 29 U.S.C. § 1132(a)." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (citing *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)), *cert. denied*, 130 S. Ct. 1053 (2010). HIPAA contains an additional express preemption provision relevant here: ERISA § 731(a), 29 U.S.C. § 1191(a), which is described in greater detail below.

**[1]** All of these preemption provisions defeat state-law causes of action on the merits. *See, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987) (§ 514(a) preemption); *Cleghorn*, 408 F.3d at 1227 (§ 502(a) preemption). Conflict preemption under ERISA § 502(a), however, also confers federal subject matter jurisdiction for claims that nominally arise under state law. *See, e.g.*, *Marin Gen.*, 581 F.3d at 945. Ordinarily, federal question jurisdiction does not lie where a

defendant contends that a state-law claim is preempted by federal law. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Marin Gen.*, 581 F.3d at 945. But state-law claims may be removed to federal court if the "complete preemption" doctrine applies. *Marin Gen.*, 581 F.3d at 945; *see also Davila*, 542 U.S. at 207-08. Relevant to this case, ERISA § 502(a) " 'set[s] forth a comprehensive civil enforcement scheme' " that completely preempts state-law " 'causes of action within the scope of th[es]e civil enforcement provisions . . . .' " *Davila*, 542 U.S. at 208-09 (quoting *Metro. Life*, 481 U.S. at 66; *Pilot Life*, 481 U.S. at 54); *see also Marin Gen.*, 581 F.3d at 945.[3]

**[2]** Following *Davila*, we have distilled a two-part test for determining whether a state-law claim is completely preempted by ERISA § 502(a): "a state-law cause of action is completely preempted if (1) 'an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B),' and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.' " *Marin Gen.*, 581 F.3d at 946 (alteration omitted) (quoting *Davila*, 542 U.S. at 210). Because this "two-prong test . . . is in the conjunctive[,] [a] state-law cause of action is preempted

---

[3]In pertinent part, ERISA § 502(a) provides:

A civil action may be brought—

(1) by a participant or beneficiary— . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a) (footnote omitted).

by § 502(a)(1)(B) only if both prongs of the test are satisfied." *Id.* at 947; *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (noting that *Davila* test is conjunctive). Both *Davila* and *Marin General Hospital* discussed complete preemption by reference to § 502(a)(1)(B) but not the other subparts of § 502(a). The complete preemption doctrine applies to the other subparts of § 502(a) as well. *See Metro. Life*, 481 U.S. at 66 ("Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court."); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 799 (9th Cir. 1987) (holding that complete preemption "is applicable to the section 502(a)(3) claims alleged in this case").

Express preemption under ERISA § 514 is also governed in relevant part by a two-prong test. Under § 514(a), ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan . . . ." 29 U.S.C. § 1144(a). But this broad preemption provision is tempered by a savings clause in § 514(b), which spares "any law of any State which regulates insurance, banking, or securities." *Id.* § 1144(b)(2)(A). "To fall under the savings clause, a regulation must satisfy a two-part test laid out in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003)." *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 3275 (2010). " 'First, the state law must be specifically directed toward entities engaged in insurance.' " *Id.* (quoting *Ky. Ass'n of Health Plans*, 538 U.S. at 342). Second, "it 'must substantially affect the risk pooling arrangement between the insurer and the insured.' " *Id.* (quoting *Ky. Ass'n of Health Plans*, 538 U.S. at 342).

**[3]** In addition to these generally applicable preemption provisions, ERISA also contains a HIPAA-specific preemption clause. Under that clause, federal HIPAA does not "supersede any provision of State law which establishes, implements, or continues in effect any standard or require-

ment solely relating to health insurance issuers in connection with group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement of" federal HIPAA. 29 U.S.C. § 1191(a)(1). The provision's plain terms appear to permit "state laws that are, generally speaking, more favorable to the insured." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 862 n.10 (7th Cir. 1997) (dictum); *accord* H.R. Rep. No. 104-736, at 205 (1996) (Conf. Rep.) (noting that HIPAA's drafters "intend the narrowest preemption," and to allow "[s]tate laws which are broader than federal requirements").[4]

## II.   Federal Subject Matter Jurisdiction

We apply the two-part *Davila* test to determine whether ERISA § 502(a) completely preempts the Fossens' state-law claims and confers federal jurisdiction. *See Marin Gen.*, 581 F.3d at 945. We initially focus our attention on the Fossens' state HIPAA cause of action.

### A.   First Prong of *Davila*

[4] Under *Davila*, the first question is whether the Fossens could have brought their complaint under § 502(a). We agree with Blue Cross that the Fossens could have done so. They are suing for restitution of premiums they allegedly overpaid in violation of Montana's HIPAA statute. As the district court correctly recognized, the Fossens' claim under *Montana* HIPAA could also have been brought under *federal* HIPAA, because the relevant state and federal HIPAA provisions are identical. Both statutes apply to "group health plan[s]" and

---

[4]The Secretary of Labor has promulgated a preemption regulation under HIPAA, but that provision's preemptive power is limited to the Secretary's own regulations. *See* 45 C.F.R. § 146.143(a) (preempting state laws that "prevent[ ] the application of a requirement of this part"; that is, Code of Federal Regulations, title 45, part 146, "Requirements for the Group Health Insurance Market"). Because the Secretary's regulations are not at issue here, we need not consider their preemptive effect, if any.

insurance companies "offering health insurance coverage in connection with a group health plan." 29 U.S.C. § 1182(b)(1); Mont. Code Ann. § 33-22-526(2)(a). Both statutes bar such entities from requiring individuals to pay insurance "premium[s] or contribution[s]" that are greater than other plan participants' premiums on account of "any health status-related factor." 29 U.S.C. § 1182(b)(1); Mont. Code Ann. § 33-22-526(2)(a). Thus, the Fossens' suit for return of premiums could have been brought under ERISA as well as state law. *See* 29 U.S.C. § 1132(a)(3)(A), (B)(ii) (allowing ERISA plan participants to sue "to enjoin any act or practice which violates any provision of [ERISA]," and "to obtain other appropriate equitable relief . . . to enforce any provisions of [ERISA]"); *Werdehausen v. Benicorp Ins. Co.,* 487 F.3d 660, 668 (8th Cir. 2007) (holding that violations of 29 U.S.C. § 1182 may be remedied through ERISA § 502(a)); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) (holding that ERISA permits suits for equitable restitution "to restore to the plaintiff particular funds or property in the defendant's possession").

The Fossens raise two related objections to this line of reasoning: first, they contend that their claims fall outside the scope of ERISA because they are suing with respect to Blue Cross's multiple employer welfare arrangement (MEWA)-level contracts,[5] which are not necessarily governed by ERISA; and second, they argue that the Montana HIPAA provision is not identical to the federal provision because the language of the Montana statute could be construed differently

---

[5]In a nutshell, the Fossens contend that separate contracts/plans exist with respect to (1) the individual Fossens' relationship with Fossen Brothers Farms, and (2) Fossen Brothers Farms's relationship with Associated Merchandisers Inc., Montana Chamber Choices Trust, and Blue Cross. The Fossens appear to concede that the first relationship constitutes an ERISA plan, but they argue that the second relationship is the only one at issue in this lawsuit, and it is a "multiple employer welfare arrangement" rather than an ERISA plan.

from the language of the federal statute. We disagree with both arguments.

**[5]** We need not delve too deeply into the Fossens' distinction between MEWA-level plans and ERISA plans, as it is clear that at least part of this lawsuit involves an ERISA plan and falls within the scope of § 502(a). An ERISA plan exists because the individual Fossens' employer, Fossen Brothers Farms, pays its employees' insurance premiums and acts as the administrator of the insurance plan. Those facts are identical to the facts we relied upon in *Crull v. GEM Insurance Co.*, 58 F.3d 1386, 1390 (9th Cir. 1995), to conclude that an employer's conduct creates an ERISA plan. *See also Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) (noting that "[a]n employer . . . can establish an ERISA plan rather easily . . . unless it is a mere advertiser who makes no contributions on behalf of its employees"). Because at least some of the contracts at issue in this action are ERISA plans,[6] this lawsuit falls within the scope of ERISA § 502(a). The individual Fossens are the participants in the ERISA plan, and they are suing Blue Cross (the plan's third-party insurance company) to enforce rights that are provided by ERISA. *See* 29 U.S.C. § 1182(b)(1). That is enough to bring a suit within the scope of ERISA § 502(a). *See Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc) (permitting § 502(a)(1)(B) suit for benefits against plan's third-party insurer).

In their second argument against complete preemption, the Fossens suggest that Montana HIPAA's use of the term "group health plan" could be construed differently from fed-

---

[6]The Fossens neither alleged nor submitted evidence showing that the terms of the purported MEWA-level plans differ from the terms of the ERISA plan. *See Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) ("[I]t is clear that an insurance policy may constitute the 'written instrument' of an ERISA plan.").

eral HIPAA's use of that term, and that Blue Cross's MEWA plans should be deemed "group health plans" under state law but not federal law. But neither the Fossens nor the *amici* have offered a plausible explanation for how Montana HIPAA's use of "group health plan" can be interpreted differently from ERISA's use of that term. Indeed, both Montana law and federal law contain identical definitions of "group health plan." Federal HIPAA defines "group health plan" as "an employee welfare benefit plan" that provides medical care payments to employees. 29 U.S.C. § 1191b(a)(1). (The definition of "employee welfare benefit plan" appears at 29 U.S.C. § 1002(1).) Montana HIPAA is identical: it defines "group health plan" as "an employee welfare benefit plan, *as defined in 29 U.S.C. § 1002(1)*," that provides medical care payments to employees. Mont. Code Ann. § 33-22-140(11) (emphasis added). We are unaware of any canon of statutory construction that allows us to ignore the Montana legislature's explicit incorporation of ERISA's definition of an operative term. *Cf. State v. Tower*, 881 P.2d 1317, 1319 (Mont. 1994) ("When Montana's legislature adopts a statute from a sister state, Montana courts follow the general rule of also adopting the construction which has been placed upon that statute by the highest court of the sister state.").

**[6]** In sum, because the Fossens " 'could have brought [their] claim under ERISA § 502(a)[ ],' " the first prong of *Davila* has been satisfied. *Marin Gen.*, 581 F.3d at 946 (quoting *Davila*, 542 U.S. at 210).

## B.  Second Prong of *Davila*

To apply the second part of *Davila*'s § 502(a) conflict preemption test, we must determine whether the state-law claims "arise independently of ERISA or the plan terms." *Davila*, 542 U.S. at 212. In other words we must ask whether or not an "independent legal duty . . . is implicated by [the] defendant's actions." *Id.* at 210.

This question requires a practical, rather than a formalistic, analysis because "[c]laimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort." *Cleghorn*, 408 F.3d at 1225 (quoting *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001)). As the *Davila* Court warned, "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their . . . claims." *Davila*, 542 U.S. at 214 (internal quotation marks omitted).

**[7]** Consistent with this practical approach, the Supreme Court has held that § 502(a) preempts various state laws that, at first glance, appear to be independent of ERISA. For example, in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990), the Court addressed a state-law wrongful discharge claim arising out of a "termination motivated by an employer's desire to prevent a pension from vesting." The Court held that this claim was conflict preempted because, although the claim was nominally premised on a state-law tort duty that was separate from ERISA, the claim was identical to "a right expressly guaranteed by [ERISA] § 510 and exclusively enforced by § 502(a)." *Id.* at 145. Similarly, in *Davila*, the Court addressed a state law that imposed a duty on insurers to use ordinary care when making medical treatment decisions. 542 U.S. at 204-06. The Court rejected the court of appeals's reasoning that the plaintiff "request[ed] 'tort damages' arising from 'an external, statutorily imposed duty of 'ordinary care.' " *Id.* at 206 (quoting *Roark v. Humana, Inc.*, 307 F.3d 298, 309 (5th Cir. 2002)). Instead, the Court refused to "elevate form over substance," and held the state-law cause of action merely duplicated rights and remedies available under ERISA, and therefore was preempted. *Id.* at 214; *see also Cleghorn*, 408 F.3d at 1226 (holding that state-law statutory claim was completely preempted under *Davila* because "the factual basis of the complaint . . . was the denial of reimbursement of plan benefits to Cleghorn").

**[8]** As in *Davila* and *Ingersoll-Rand*, the Fossens' state-law HIPAA claim is identical to the federal-law HIPAA claim they could have filed. The state-law claim, although purportedly separate and distinct from ERISA, "falls squarely within the ambit" of federal HIPAA. *Ingersoll-Rand*, 498 U.S. at 142. Indeed, the state statute is expressly *dependent* on federal law (and thus is not "independent" of federal law for purposes of *Davila*) because the statute, by its very terms, applies only to ERISA plans. *See* Mont. Code Ann. § 33-22-526(2)(a) (law applies only with respect to "group health plan"); Mont. Code Ann. § 33-22-140(11) (defining "group health plan" as "an employee welfare benefit plan, as defined in 29 U.S.C. § 1002(1)"). As in *Cleghorn*, the Fossens' state-law HIPAA claim " 'exist[s] here only because of [Blue Shield's] administration of ERISA-regulated benefit plans.' " *Cleghorn*, 408 F.3d at 1226 (quoting *Davila*, 542 U.S. at 213). Accordingly, the second prong of *Davila* has been satisfied, and the Fossens' state HIPAA claim is completely preempted by ERISA § 502(a).

**[9]** In an effort to avoid complete preemption, the Fossens and *amici* argue that § 502(a) conflict preemption does not apply because the state HIPAA law is exempted from express preemption under ERISA § 514 and § 731. But as the Court stressed in *Davila*, § 502(a) *conflict* preemption is distinct from *express* preemption. 542 U.S. at 214 n.4, 217-18. By explicitly decoupling the § 502(a) complete preemption and § 514 express preemption analyses, *Davila*'s reasoning abrogated our prior statement that:

> Complete preemption can be invoked only when two conditions are satisfied: (1) ERISA expressly preempts the state law cause of action under 29 U.S.C. § 1144(a) (*i.e.* "conflict preemption") and (2) that cause of action is encompassed by the scope of the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a) (*i.e.* "displacement").

*Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811, 819 (9th Cir. 2001); *see also Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137, 1141-42 (9th Cir. 2002); *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1216 (9th Cir. 2000), *amended*, 208 F.3d 1170 (9th Cir. 2000); *Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 953 (9th Cir. 1998), *abrogated on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001); *Toumajian v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998); *Buster v. Greisen*, 104 F.3d 1186, 1188 (9th Cir. 1997).

**[10]** Because this test for complete preemption cannot be reconciled with the language or holding of *Davila* (which found complete preemption under § 502(a) to be independent of express preemption under ERISA § 514), our pre-*Davila* cases articulating this complete preemption test are no longer good law. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *accord Cleghorn*, 408 F.3d at 1226 n.6 ("[W]e need not decide whether California's section 1371.4(c) is excepted from preemption under section 514(b)(2)(A) as a state regulation of insurance. Preemption under ERISA section 502(a) is not affected by that exception." (citation omitted)).

**[11]** Whether or not the state HIPAA statute is exempt from § 514 and § 731 express preemption, it may still be conflict preempted under § 502(a)—and we hold that it is. Although the Secretary of Labor's contrary opinion is entitled to respectful consideration, *see generally United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) (summarizing the Court's applications of "*Skidmore*" deference, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)), we decline to defer to a position that fails to grapple with the full implications of conflict preemption cases such as *Davila*, *Ingersoll-Rand*, and *Cleghorn*.

Much of the Secretary's conflict-preemption discussion focuses on Congress's intent, expressed in ERISA § 731, to

allow states to expand upon the rights created by federal HIPAA. We express no opinion about whether our holding would apply to a state HIPAA statute that provided *additional protections* beyond federal HIPAA and was not *exactly identical* to federal HIPAA. *Cf.* H.R. Rep. No. 104-736, at 205 (1996) (Conf. Rep.) (stating the conference committee's intent to preserve "[s]tate laws which are *broader* than federal requirements" (emphasis added)). Likewise, we need not decide whether Blue Cross is correct that, under the logic of *UNUM Life Insurance Co. of America v. Ward*, 526 U.S. 358, 377 n.7 (1999), a plaintiff may vindicate a non-preempted state-HIPAA right by "appl[ying] [the] saved state insurance law as a relevant rule of decision in his § 502(a) action"; the Fossens have neither pleaded this theory in their complaint nor asserted it in their briefs.

## C. Summary

**[12]** Because the Fossens' state HIPAA cause of action could have been brought under ERISA § 502(a), and because that cause of action is identical to and expressly dependent upon ERISA, the district court properly denied the Fossens' motion to remand and exercised jurisdiction over this case.[7]

---

[7]Although the district court did not explicitly discuss supplemental jurisdiction, the court evidently concluded that any non-preempted state-law claims were "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also* 28 U.S.C. § 1441(c). We agree with that conclusion, but add that the district court is free to reexamine this issue on remand. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866-67 (2009) (collecting authorities); *Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

### III.  Summary Judgment

#### A.  HIPAA

**[13]** Because the Fossens' state-law HIPAA claim is conflict-preempted by § 502(a), it fails on the merits. *See, e.g.*, *Cleghorn*, 408 F.3d at 1227. The district court proceeded cautiously and construed the Fossens' state HIPAA claim as a federal HIPAA claim. The court then held that Blue Cross did not violate HIPAA as a matter of law. But because the Fossens never requested that the district court recharacterize their state-law claim in this manner, the court need not have taken this extra step; it simply could have granted summary judgment for Blue Cross on account of § 502(a) conflict preemption. *Compare Stewart v. U.S. Bancorp*, 297 F.3d 953, 959 (9th Cir. 2002) (holding that plaintiffs bear the "burden to amend their complaint" to assert claims that are not preempted by ERISA), *with Crull*, 58 F.3d at 1391 ("In their motion opposing summary judgment, the Crulls asked that, should the District Court find their state law claims preempted, they be given relief under ERISA's civil enforcement scheme instead . . . ."). In any event, because the Fossens' briefs do not contest the district court's conclusions under federal law, they have waived such arguments. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

#### B.  Unfair Insurance Practices

The Fossens do, however, contest the district court's grant of summary judgment on their statutory unfair insurance practices claim. We reverse the district court's grant of summary judgment and remand this claim for further consideration.

##### 1.  Preemption

To determine whether the Fossens' state-law unfair insurance practices claim is preempted by ERISA on the merits, we must consider express preemption under ERISA § 514 and

conflict preemption under ERISA § 502(a). *See Paulsen*, 559 F.3d at 1081.

**[14]** With respect to preemption under § 514, the state statute meets both parts of *Kentucky Ass'n of Health Plans v. Miller*'s standard governing the § 514(b)(2)(A) exception to preemption: the state statute is "specifically directed toward entities engaged in insurance" and it "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Morrison*, 584 F.3d at 842 (internal quotation marks omitted).[8] The statute is plainly directed at insurance companies because it regulates insurance rates and premiums, Mont. Code Ann. § 33-18-206(2), and, in fact, the statute appears in a section of the Montana Code entitled "Insurer's Relations with Insured and Claimant," Mont. Code Ann. tit. 33, ch. 18, pt. 2. Moreover, the statute affects the risk-pooling arrangement because it regulates insurers' ability to obtain a premium that accurately reflects the risk being insured. *See Morrison*, 584 F.3d at 844 ("Insurance companies' core function is to accept a number of risks from policyholders in exchange for premiums."); *see also Ky. Ass'n of Health Plans*, 538 U.S. at 338-39 (stating that laws that "alter the scope of permissible bargains between insurers and insureds . . . substantially affect[ ] the type of risk pooling arrangements that insurers may offer"). The statute is therefore exempt from § 514(a) preemption because it falls within the insurance savings clause of § 514(b)(2)(A).

**[15]** With respect to conflict preemption, the unfair insurance practices statute does not run afoul of § 502(a) and *Davlia* because the Fossens seek relief (restitution) that is consistent with ERISA's enforcement scheme, *cf. Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (holding that Montana cause of action for claims-processing violation was preempted by § 502(a) because it permitted

---

[8]The parties do not dispute that the statute "relate[s] to" an ERISA plan. 29 U.S.C. § 1144(a).

remedies unavailable under ERISA), and because the state anti-discrimination rule is completely "independent" of ERISA, *Davila*, 542 U.S. at 210. We agree with the Third Circuit's analysis of a nearly identical New Jersey statute: conflict preemption is inappropriate because no "provision of ERISA expressly guarantees th[e] same right" as the state statute. *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 356 (3d Cir. 1993). Unlike the state-law HIPAA claim, the unfair insurance practices statute applies without regard to the existence of an ERISA plan. *Cf. Cleghorn*, 408 F.3d at 1226 (holding that second prong of *Davila* was satisfied where the state statute applied "because of [Blue Shield's] administration of ERISA-regulated benefit plans"). Also, the unfair insurance practices statute creates a right that is separate from and could not possibly be remedied under ERISA. Whereas HIPAA (both the state and federal versions) prohibits plans and their insurers from charging different premiums on account of "health status-related factor[s]," 29 U.S.C. § 1182(b)(1); Mont. Code Ann. § 33-22-526(2)(a), the unfair insurance practices statute applies more broadly to bar "*any* unfair discrimination" with respect to premiums, Mont. Code Ann. § 33-18-206(2) (emphasis added); *see, e.g.*, *McCarter v. Glacier Gen. Assurance Co.*, 546 P.2d 249, 251 (Mont. 1976). Because these statutes are not identical in scope (as is the case with the state and federal HIPAA provisions), they are not conflict preempted.

### 2. Merits

With respect to the merits of this claim, we disagree with Blue Cross's argument that the unfair insurance practices claim is "inextricably intertwined" with the state HIPAA claim and accordingly fails as a matter of law. Fairly read, the Fossens' complaint seeks to remedy distinct violations of *both* state HIPAA *and* state unfair insurance practices statutes. These separate statutes require separate legal analyses. Neither the district court's decision nor the parties' briefs provide the necessary analysis of this claim. We remand so that the

district court may consider the merits of the unfair insurance practice claim in the first instance. *See Golden Gate Hotel Ass'n v. City & Cnty. of S.F.*, 18 F.3d 1482, 1487 (9th Cir. 1994). The Fossens' breach of contract claim, as pleaded in the complaint, is premised in part on the state unfair insurance practices claim, and accordingly survives summary judgment along with the unfair insurance practices claim.

## IV.  Leave to Amend

The Fossens further contend that they should be allowed to amend their complaint to state a breach of contract claim related to Blue Cross's agent's representations prior to their initial purchase of a Blue Cross policy. We disagree. The district court was within its discretion when it declined to give the Fossens leave to amend, as they first asserted this theory in opposition to summary judgment. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010); *see also AmerisourceBergen*, 465 F.3d at 953 (stating that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable," and that a plaintiff may not "drastically change[ ] its litigation theory" "twelve months into the litigation").

## CONCLUSION

**[16]** The district court properly exercised jurisdiction over this matter because the Fossens' Montana HIPAA claim is completely preempted by ERISA § 502(a). We reverse and remand the district court's grant of summary judgment to Blue Cross with respect to the Fossens' unfair insurance practices claim and part of the related breach of contract claim (as pleaded in the complaint). The district court did not abuse its discretion by declining to permit the Fossens to amend their complaint.

We remand so that the district court may address the state unfair insurance practices claim in the first instance. Each party shall bear its own costs.

**AFFIRMED in part, REVERSED in part, and REMANDED.**