**NATIONWIDE DME, LLC, Plaintiff,**

**v.**

**CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al., Defendants.**

**No. CV–14–02026–PHX–SPL**

United States District Court, D. Arizona.

Signed September 30, 2015

party take action).

Joseph A. Creitz, Lisa Sharon Serebin, Creitz & Serebin LLP, San Francisco, CA, Julio Medina Zapata, Zapata Law PLLC, Phoenix, AZ, for Plaintiff.

Ishra Khalifa Solieman, John C. West, Robert Matthew Kort, Brownstein Hyatt Farber Schreck LLP, Kristina Novotny Holmstrom, Michael Charles Brown, Lewis Roca Rothgerber LLP, Phoenix, AZ, for Defendant.

## ORDER

Honorable Steven P. Logan, United States District Judge

Before the Court is Defendants' Motion to Dismiss (Doc. 32). The motion is fully briefed and, for the reasons that follow, will be denied.

### I. Background

Plaintiff Nationwide DME, LLC ("Nationwide") is a supplier of durable medical equipment, in particular "prescription therapeutic programmable computerized pump[s] and related equipment." (Doc. ¶ 8.)[1] These devices "are used to supply medically therapeutic compression, heat, and/or cold to various parts of the human body." (Doc. ¶ 8.) Each type of pump is assigned a unique "Healthcare Common

---

1. The Court treats the following allegations contained in the First Amended Complaint as true for purposes of the instant motion to dismiss. *See infra.*

Procedure Coding System" ("HCPCS") code. The HCPCS codes are used by equipment providers when billing patients. (Doc. ¶¶ 9–10.)

Nationwide alleges that its standard practice upon receiving a patient's prescription for a pump is to contact the patient's insurer or claims administrator and inquire whether the patient's health plan provides coverage, under the relevant HCPCS Code, for the type of pump prescribed. If the patient's health plan requires preauthorization for a pump, Nationwide seeks that preauthorization. Only once coverage is confirmed and any necessary preauthorization is obtained does Nationwide provide the patient with a pump. In connection with providing a pump, Nationwide obtains a written assignment of any benefits the patient may be eligible for under his or her health plan. After obtaining the assignment and providing the pump, Nationwide bills the patient's insurer or claims administrator. (Doc. 30 ¶¶ 12–16.)

At issue here, is the application of Nationwide's standard practice in the case of thirty-seven individuals. (Doc. 30 ¶ 5.) These individuals allegedly participated in different group health plans,[2] all administered by Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collec-

tively "Cigna"). In administering the plans, Cigna was responsible for making decisions regarding benefit eligibility. For each of the thirty-seven individuals, Nationwide contacted Cigna by telephone to determine whether payment would be provided for a pump.[3] For most of the patients, Cigna confirmed that it would pay for all three HCPCS codes. For some patients, however, Cigna stated it would only pay for certain HCPCS codes. Nationwide also discussed with Cigna representatives whether the patient's health plan required preauthorization. If required, Nationwide obtained that preauthorization. Nationwide then provided the thirty-seven individuals with pumps and billed Cigna. (Doc. 30 ¶¶ 13–17.)

Cigna initially denied almost all of the thirty-seven individuals' claims. For the denied claims, Nationwide pursued the administrative appeals process and Cigna reversed itself on some of the claims. In doing so, Cigna admitted that representations made to Nationwide during phone calls "constituted promises to pay benefits." (Doc. 30 ¶ 17.) Thus, Cigna paid a small subset of claims. Eventually, however, Cigna realized there was ongoing confusion between what its phone representatives were telling Nationwide and what Cigna believed was actually covered by the various health plans. Consequent-

---

**2.** Nationwide identifies approximately 27 sponsoring employer plans: Choice Hotels International; Miller MC, Inc., DBA, Larry H. Miller MA; Cigna Companies; Choice Hotels International; American Traffic Solutions; CIGNA; Starwood Hotels; Cigna Companies; Procopy Office Solutions; Starwood Hotels & Resorts Worldwide, Inc.; USA Hauling & Recycling, Inc.; Motive Investment Group Employee Benefit Trust; Cancer Treatment Centers of America; Partners in Recovery, LLC; Hospice of the Valley; Partners in Recovery, LLC; Desert Mountain Club; Starwood Hotels & Resorts Worldwide, Inc.; Furniture Values International; AVIS Budget Group; Furniture Values International; Grand Can-

yon University; Automotive Investment Group Employee Benefit Trust; Concentrix Corporation; General Dynamics Corp.; The Berge Group; JP Morgan Chase & Co.; and Ariz. OB/GYN Affiliates, PC. (Doc. 30 ¶ 5.)

**3.** Cigna disagrees with this characterization of the phone conversations. According to Cigna, the conversations consisted of it stating the pumps were covered by the health plans. But according to Nationwide, the phone conversations were promises by Cigna that it would pay for the pumps. As complaint is being evaluated at the motion to dismiss stage, all inferences are drawn in favor of Nationwide.

ly, Cigna sent a letter regarding one patient's claim. (Doc. 30 ¶ 20; 49–50.) The letter explained the patient's claim was being paid "because the Cigna representative made an error" when stating "no precertification was required." However, Cigna would "not consider for payment any additional claims from [Nationwide]" under two HCPCS codes. (Doc. 30 ¶ 20; 49–50.) The letter also stated Nationwide could never "rely on any communications [with] a Cigna call representative" because those representatives "do not have the authority to bind Cigna to pay" claims. (Doc. 30 ¶ 20.)

Consequently, Nationwide filed a First Amended Complaint in January 2015 (Doc. 30), bringing four causes of action.[4] In the first and second causes of action (Doc. 30 ¶¶ 21–35), Nationwide asserts state law claims for breach of contract and "promissory estoppel/breach of promise," based on allegations that Cigna made statements constituting "promises to pay Plaintiff its usual, reasonable, and customary charges for providing ... durable medical equipment." (Doc. 30 ¶ 22.) Nationwide brings these claims on its own behalf, alleging that a contract existed between it and Cigna whereby Cigna agreed to pay for the pumps. In the third and fourth causes of action, Nationwide brings federal claims under ERISA, *see infra.* Unlike its state law claims, Nationwide asserts the ERISA claims as the assignee of the individuals covered by the health plans. First, Nationwide brings an ERISA claim for benefits under the terms of the various health plans. (Doc. 30 ¶¶ 36–46.) Second, Nationwide brings an ERISA claim for "estoppel and breaches of fiduciary duty." (Doc. 30 ¶¶ 47–56.) This latter claim asserts two distinct theories. Under the estoppel theory, Nationwide claims it relied on Cigna's verbal representations and Cigna should be estopped from refusing payment. Under the breach of fiduciary duty theory, Nationwide claims Cigna breached its fiduciary duty by providing inaccurate information and interpreting identical plan language as sometimes covering the pumps, while at other times not.

Cigna moves to dismiss Nationwide's two state law claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that they are preempted by federal law.

## II. Legal Standards

■ Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted if it fails to state: (1) a cognizable legal theory; or (2) sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). *See also* Fed.R.Civ.P. 8(a)(2); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a complaint for failure to state a claim, the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.2010); *see also Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009).

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* governs the administration of employee benefit plans and protects the interests of plan participants and their beneficiaries with uniform guidelines and rules. *Metropolitan Life Ins. Co. v. Parker,* 436 F.3d 1109, 1111 (9th Cir.2006). It includes two primary preemption provi-

---

4. The Court assumes the parties' familiarity with the procedural history of this action pri- or to this filing.

sions that defeat state-law causes of action: complete preemption under ERISA § 502(a),[5] and conflict preemption under ERISA § 514(a).[6] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir.2009); *Fossen v. Blue Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir.2011).[7]

■■■ Complete preemption applies where "state-law causes of action come within the scope of § 502(a)(1)(B)," in which case, "those causes of action are completely preempted, and the only possible cause of action is under § 502(a)(1)(B)." *Marin*, 581 F.3d at 946. *See also K2 America Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir.2011) (complete preemption "converts state common law claims into claims arising under federal law for purposes of jurisdiction."). Conflict preemption, by comparison, applies where state-law causes of

action "relate to" to an ERISA benefit plan, in which case the state-law claims are preempted under § 514(a). *Marin*, 581 F.3d at 946.

The " 'relate to' language" underscoring § 514 preemption "has been the source of great confusion and multiple and slightly differing analyses." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir.2009). The "relate to" inquiry however, generally turns on whether the state law claim at issue has "reference to" an ERISA plan or if the claim has a "connection with" an ERISA plan. *Paulsen*, 559 F.3d at 1082.

## III. Discussion

In moving to dismiss, Cigna invokes the conflict preemption doctrine, arguing that Nationwide's two state law claims are preempted under § 514(a). (Doc. 32 at 7.) It follows that if Nationwide's state-law claims have a "reference to" or "connection with" the Cigna's ERISA plan(s),[8] the claims cannot proceed.

---

**5.** ERISA § 502(a) provides that a participant or beneficiary of a plan may sue in federal court "to recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

**6.** ERISA § 514(a) provides that the relevant provisions of ERISA "shall supersede any and all State laws insofar as they may ... relate to any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added).

**7.** "In general, there are three forms of *defensive preemption*: express preemption, field preemption, and conflict preemption." *Retail Property Trust v. United Broth. of Carpenters and Joiners of America*, 768 F.3d 938, 948 (9th Cir.2014) (" 'Complete preemption' is a doctrine applicable to removal jurisdiction only; it is not a doctrine of defensive preemption, although there has been more than a little confusion in our cases and in the cases generally.") (emphasis added). For purposes of consistency however, and because Cigna argues only § 514 preemption, the Court uti-

lizes the preemption terms employed by Cigna.

**8.** The Court notes that this discussion does not to apply to all individuals and health plans at issue. The parties agree that at least one plan at issue—the health plan established by the Maricopa County Special Health District—is a non-ERISA plan. (Docs. 30 ¶ 6; 33 at 9–11; 34 at 1.) Therefore, the instant preemption challenge does not apply to Nationwide's state law claims involving any individual covered by that health plan. It therefore follows that Nationwide's ERISA claims cannot be asserted on behalf of the individuals covered by the Maricopa County Special Health District plan. The parties disagree as to whether the health plan established by Grand Canyon University is a non-ERISA church plan. (Doc. 33 at 9–12.) Because the Court determines that Nationwide's state-law claims are not preempted by any ERISA plan, it need not resolve the ERISA status of Grand Canyon University's plan here. Further, if the Grand Canyon University plan is not subject to ERISA, Nationwide will not be able to pursue ERISA claims against it.

## A. "Reference to" ERISA Plan

██ "To determine whether a [state law claim] has a forbidden 'reference to' ERISA plans, [a court must] ask whether (1) the [claim] acts immediately and exclusively upon ERISA plans, or (2) the existence of ERISA plans is essential to the [claim] ..." *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 546 F.3d 639, 657 (9th Cir.2008). Nationwide's state law claims are common law claims for breach of contract and promissory estoppel. These claims do not act "immediately and exclusively upon ERISA plans" because state law claims of this type are routinely brought where no ERISA plan lurks in the background. *Id.* That is, the claims arise from "state law doctrines of general application." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 724 (9th Cir. 1997). Thus, the first way the claims may have a forbidden "reference to" ERISA plans is not met.

As for the second way, the "existence of ERISA plans" is not essential to Nationwide's claims. Here, Nationwide asked if Cigna would pay for certain equipment and Cigna stated it would. The fact that ERISA plans were in the background is not essential to its claims. The fact that Nationwide's state law claims are also brought against non-ERISA plans, such as the plan administered by the Maricopa County Special Health District, is only further reason to conclude that the existence of an ERISA plan is not essential to those claims.

Because the claims do not act exclusively on ERISA plans, and the ERISA plans are not essential to the claims, Nationwide's state-law claims survive the "reference to" preemption inquiry.

## B. No "Connection With" ERISA Plans

██ Turning to the "connection with" aspect of conflict preemption, "the Supreme Court has not provided a succinct definition of, or analytical framework for, evaluating" this phrase. *Paulsen*, 559 F.3d at 1082. The Ninth Circuit instructs courts to look "to the objectives of the ERISA statute as a guide" to the type of claims "Congress understood would survive." *Id.* Courts also look "to the nature of the effect" on ERISA plans if the claims are permitted to proceed. *Id.* Under this approach, a primary concern is whether the claims will "encroach on ERISA-regulated relationships." *Id.* at 1083. Those relationships include "the relationship between plan and plan member, between plan and employer, [and] between employer and employee." *Id.*

██ In the present case, Nationwide is acting in two capacities, one involving an ERISA-regulated relationship and one not. First, Nationwide is acting as the assignee of individuals' claims under their ERISA plans. It is in that capacity that Nationwide has asserted its ERISA claims. Nationwide's actions in that capacity will, of course, have a direct impact on an ERISA-regulated relationship, *i.e.*, plan and plan member. But Nationwide is also suing on its own behalf, as a third-party supplier of medical equipment. It is in that capacity that Nationwide is bringing its state-law claims. The relationship between a medical supply company and a claims administrator does not qualify as an ERISA-regulated relationship. In fact, ERISA does not directly regulate such relationships.[9] More generally, Nationwide's claims will have no direct effect on the underlying

9. The material distinction here is that Nationwide brings claims based on *its* conversations with Cigna. If a plan participant were to bring state law claims based on phone conversations, those claims would have a direct and substantial impact on an ERISA-regulated relationship. The latter, in comparison, would likely be preempted.

ERISA plans. Nationwide's state law claims can be viewed as based not on the plans refusing to pay for the pumps, but on Cigna itself refusing to pay. Under this view of the claims, there is not a forbidden "connection with" ERISA plans.

### C. Consistent Authority

While not cited by the parties, both the Ninth and Fifth Circuit have addressed ERISA preemption in circumstances nearly identical to that presented here. *See Meadows v. Employers Health Insurance,* 47 F.3d 1006 (9th Cir.1995) and *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 245 (5th Cir.1990).

*Meadows* involved a medical care provider that had "telephoned [an ERISA plan] regarding the existence of coverage for" an individual allegedly covered by an ERISA plan. *Meadows,* 47 F.3d at 1007. The plan "verified coverage" existed, and the medical provider rendered care. *Id.* Later, however, the plan refused to pay for the treatment. The provider brought suit, alleging state law claims for "negligent misrepresentation, estoppel, and breach of contract." *Id.* at 1008. The ERISA plan removed the case to federal court, arguing the state law claims were preempted. The district court disagreed and remanded the case to state court. On appeal, citing to § 514(a) (as codified at 29 U.S.C. § 1144),[10] *Meadows* considered "whether ERISA preempts claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary, but as an *independent* entity claiming *damages.*" *Id.* (emphasis in original). It concluded that ERISA did not preempt such claims because the state law claims of the third-party provider fell "outside the bounds of the ERISA 'relates to' standard." *Id.* at 1009. In doing so, *Meadows* specifically rejected and found "no merit" to the argu-

ment that the provider's telephone call confirming coverage "implicated the administration of the ERISA plan." *Id.* at 1010. The telephone call did not implicate ERISA because the provider's claims made "no reference to and function[ed] irrespective of the existence of an ERISA plan." *Id.* (internal quotation marks omitted). That is, the claims arose precisely because of the lack of payment, irrespective of the plan. *See id. See also Catholic Healthcare West–Bay Area v. Seafarers Health & Benefits Plan,* 321 Fed.Appx. 563, 564 (9th Cir.2008) ("[W]here a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), no ERISA-governed relationship is implicated and the claim is not preempted.").

The court in *Meadows* cited approvingly to *Memorial,* which also involved a third-party's claims arising from alleged misrepresentation of coverage by an ERISA administrator. *Memorial,* 904 F.2d at 245. *Memorial* similarly rejected the argument that third-party claims of this sort are preempted by ERISA. *Id.* There, a hospital called an employer to "verify coverage" under an ERISA plan. *Id.* at 239. After confirming coverage existed, the hospital provided care. Yet, when the hospital sought payment, the employer refused to pay. *Id.* The hospital then brought state law claims for unfair trade practices, breach of contract, negligent misrepresentation, and equitable estoppel. In conducting its preemption analysis, the Fifth Circuit distinguished between the state law claims the hospital asserted as the "assignee of [the plan participant's] benefits under [the ERISA] plan" and the unfair trade

---

**10.** While *Meadows* comingles ERISA preemption doctrines, its discussion of the "relate to"

provision at issue in § 514(a) remains instructive.

practices claim which was "independent of the plan's actual obligations." *Id.* at 250. While the first set of claims was preempted, the Fifth Circuit determined that the unfair trade practices claim was not. In doing so, *Memorial* considered the "commercial realities of [the hospital's] position as a health care provider," and looked to whether Congress intended for the relationship between healthcare providers and health plans to be "regulated exclusively by ERISA." *Id.* at 246–247. It addressed the reality that it was common practice for healthcare providers to confirm health plan coverage before providing care, and found that

> If providers have no recourse under either ERISA or state law in situations such as the one *sub judice* (where there is no coverage under the express terms of the plan, but a provider has relied on assurances that there is such coverage), providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences—before treatment will be offered. This does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA.

*Id.* at 247–248. Based on these considerations, the Fifth Circuit concluded the unfair trade practices claim was not preempted. *See Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229, 230 (5th Cir.2012) (affirming *Memorial* "in reaching the conclusion that . . . the provider's state law claims, for negligent misrepresentation, promissory estoppel . . . were not preempted by ERISA").

The logic in *Meadows* and *Memorial* convincingly militate against Cigna's preemption arguments. Nationwide alleges that it repeatedly contacted Cigna to ensure it would receive payment before it agreed to provide medical equipment to others. Cigna promised that if Nationwide provided pumps to people, Cigna would pay for them. Relying on that promise, Nationwide met its end of the bargain, but Cigna did not. Nationwide's third-party state law claims exist irrespective of the ERISA plans, and preempting its claims would not advance the purpose of the statute. Whether participants were in fact entitled to these pumps under the terms of their ERISA plans is immaterial to whether Cigna misled Nationwide with a promise that it decided not to keep. *Memorial*, 904 F.2d at 246. Likewise, "insulating plan fiduciaries from the consequences of their own misrepresentations to third-party providers," as would be the case here, "does not further any of ERISA's objectives." *Meadows*, 47 F.3d at 1010. Had Congress wished to regulate the relationship between third-party medical supply companies and ERISA plans, it would have done so. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (ERISA is a "comprehensive and reticulated statute"). But, Congress did not.

## IV. Conclusion

For these reasons, the Court concludes that the state law claims are not preempted. Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Doc. 32) is **denied.**

**IT IS FURTHER ORDERED** that Defendants shall have until **October 13, 2015** to file an answer to the First Amended Complaint.