AMENDED OPINION
FARRIS, Circuit Judge.
OPINION
I. FACTUAL AND PROCEDURAL HISTORY
On August 2, 2002, AmerisourceBergen Corporation[1] brought suit against Dialy-sist West, Inc. alleging that Dialysist West breached a sales agreement concerning the sale of the drug Epogen S40. Following its determination that 50% to 100% of the Epogen it purchased from Dialysist West was counterfeit, AmerisourceBergen withheld payments due Dialysist West on non-Epogen drug sales. On March 18, 2003, Dialysist West filed a counterclaim demanding that AmerisourceBergen pay the approximately $2.2 million it owed for the non-Epogen products Dialysist West had shipped to AmerisourceBergen. On the same day, Dialysist West also filed an Epogen-related, third-party complaint against pharmaceutical distributors Am-eRx Inc., CSG Distributors, and Optia Medical. On April 21, 2003, CSG Distributors filed a third-party complaint against Premier Medical Distributors Inc., and on July 14, 2003, AmeRx filed a third-party complaint against three more Epogen distributors.
On May 30, 2003, AmerisourceBergen filed a reply to Dialysist West’s counterclaim conceding that it had not paid for the non-Epogen products (including Procrit) and that these products were genuine. On July 22, 2003, Dialysist West filed a motion for judgment on the pleadings and for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) on the $2.2 million counterclaim. On August 25, 2003, AmerisourceBergen filed a cross-motion for leave to amend its complaint and its reply to Dialysist West’s counterclaim, changing its tack by alleging that Dialysist West had also sold it counterfeit Procrit. On January 6, 2004, the district court granted Dialysist West’s motion for judgment on the pleadings, denied Amerisour-ceBergen’s motion for leave to amend, and certified the judgment as final under Rule 54(b). On March 3, 2004, the district court denied AmerisourceBergen’s motion to stay execution of judgment and Ameri-sourceBergen filed this appeal on March 24, 2004.
II. JURISDICTION & STANDARD OF REVIEW
We have subject matter jurisdiction over the final decision of the district court pursuant to 28 U.S.C. § 1291. We review the district court’s interpretation of Arizona contract law de novo. El-Hakem v. BJY Inc., 415 F.3d 1068, 1072 (9th Cir.2005). The denial of AmerisourceBergen’s motion for leave to amend is reviewed for abuse of discretion. See Bowles v. Reade, 198 F.3d 752, 757 (9th Cir.1999). The district court’s Rule 54(b) certification of the judgment is reviewed de novo to determine if it will lead to “piecemeal appeals” and for “clear unreasonableness” on the issue of equities. See Gregorian v. Izvestia, 871 F.2d 1515, 1519 (9th Cir.1989). The district court’s refusal to stay enforce *950 ment of the judgment under Rule 62(h) is reviewed for abuse of discretion. See MacKillop v. Lowe’s Mkt., Inc., 58 F.3d 1441, 1446 (9th Cir.1995).
III. DISCUSSION
A. Setoff of Epogen Claims
AmerisourceBergen claims that the district court erred in finding that it could not set-off the approximately $2.2 million it owes Dialysist West for non-Epogen, pharmaceutical purchases against the estimated $8 million judgment it seeks from Dial-ysist West for selling AmerisourceBergen counterfeit Epogen. AmerisourceBergen bears the burden of establishing that it is entitled to either a legal or equitable setoff of its claims. See Newbery Corp. v. Fireman’s Fund Ins. Co., 95 F.3d 1392, 1399 (9th Cir.1996).
AmerisourceBergen and Dialysist West agree that section 47-2717 of the Arizona Commercial Code applies. The Arizona statute, a codification of section 2-717 of the Uniform Commercial Code, provides:
The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.
Ariz.Rev.Stat. § 47-2717 (2006). A plain reading of the statute indicates that a party may not set-off a contractual claim against a debt on a separate contract. See ITV Direct, Inc. v. Healthy Solutions, LLC, 379 F.Supp.2d 130, 133 (D.Mass.2005) (“Section 2-717 is not a general set-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer.”).
AmerisourceBergen concedes that the contracts for sale of Epogen and the other drugs were separate contracts. But because the Vendor Agreement signed by Dialysist West permits AmerisourceBer-gen to return any goods to Dialysist West for “full credit,” AmerisourceBergen believes it was justified in applying the credit it held for the counterfeit Epogen purchases against its outstanding debts. Am-erisourceBergen’s reading of the Vendor Agreement is strained.[2] The Vendor Agreement does not indicate that Ameri-sourceBergen can offset one deficient transaction against another transaction. Rather, as the district court pointed out, “[t]he plain language of the provision links the allowable credit to the specific returned goods.” AmerisourceBergen Corp. v. Dialysist West, Inc., No. CIV-02-1472 PHX JWS, slip op. at 13 (D.Ariz. Jan. 6, 2004).
The contract clause is not ambiguous, as AmerisourceBergen argues. The intention of the parties is clear: to create a return policy by which AmerisourceBergen can fully recover for returned goods that do not meet its standards. See Smith v. Melson, Inc., 135 Ariz. 119, 659 P.2d 1264, 1266 (1983) (stating that a contract should be read in light of the intentions of the parties as reflected in the language and circumstances of the contract); see also ECHO, Inc. v. Whitson Co., 52 F.3d 702, 705 (7th Cir.1995) (holding under Illinois law that in applying UCC section 2-717, purchase orders cannot be setoff against damages buyer sustains as result of breach of related distributorship agreement).
Furthermore, AmerisourceBergen has provided no evidence that it was the pattern or practice of the parties or industry custom to offset deficiencies in one sales contract by giving discounts or “credit” on other sales contracts. See Mohave Valley Irrigation & Drainage Dist. v. Norton, *951 244 F.3d 1164, 1166 (9th Cir.2001) (“According to the UCC, to determine whether a contract’s terms are ambiguous, courts may only consider evidence of course of dealing, trade usage, or course of performance.”). The district court did not err in holding that AmerisourceBergen had no legal right to set-off its Epogen claims against its other contractual claims.
AmerisourceBergen argues that even if it is not entitled to offset its debt under section 47-2717 of the Arizona Commercial Code, Dialysist West’s insolvency affords it an equitable right of setoff under Arizona common law. But Amerisource-Bergen’s claim to equitable setoff is preempted by 47-2717. Arizona’s Commercial Code provides that “principles of law and equity” apply “unless [displaced] by the particular provisions of this title.” Ariz.Rev.Stat. § 47-1103 (2006); see also John Deere Co. v. First Interstate Bank, 147 Ariz. 256, 709 P.2d 890, 894 (1985). Although no Arizona court has ruled on whether section 47-2717 preempts a common law claim for setoff, several federal courts have indicated that the corresponding UCC section preempts equitable set-offs. See ITV Direct, 379 F.Supp.2d at 133; Carlisle Corp. v. Uresco Const. Materials, Inc., 823 F.Supp. 271, 275 (E.D.Pa.1993). As the court convincingly reasoned in Carlisle, because the UCC “specifically provides for set-offs in particular circumstances ... we must conclude that the Code drafters, and the state legislatures that have adopted the Code, meant to displace common law set-off.” Carlisle, 823 F.Supp. at 275. It is apparent that the Arizona legislature intended section 47-2717 to supercede the common law of set-off. The district court did not err in denying AmerisourceBergen’s common law claim for equitable setoff.
B. Denial of Leave to Amend
AmerisourceBergen appeals the district court’s decision to deny it leave to amend its reply pursuant to Federal Rule of Civil Procedure 15(a).[3] Rule 15(a) is very liberal and leave to amend “shall be freely given when justice so requires.” See Bowles v. Reade, 198 F.3d 752, 757 (9th Cir.1999). But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. Id. at 758; Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.1990).
AmerisourceBergen filed its leave to amend on August 25, 2003, nearly fifteen months after it first learned that counterfeit Procrit was in the marketplace and three months after entering a reply where it conceded that the products for which it had not paid Dialysist West, including Procrit, were genuine. In the dissent, Judge Tashima emphasizes the district court’s filing of a pretrial scheduling order on July 7, 2003, which extended the period for filing a motion to amend from June 2, 2003 to December 2, 2003; and the non-expert discovery cutoff date from August 1, 2003 to February 2, 2004.[4] Be *952 cause AmerisourceBergen’s motion for leave to amend was filed before the cutoff date set by the court, Judge Tashima concludes that the motion was “presumptively timely” and the district court therefore abused its discretion in denying the motion. (Dissent at 17332; citing Halbert v. City of Sherman, 33 F.3d 526, 529 (5th Cir.1994)).[5]
By the dissent’s reasoning, a district court initially has the discretion to determine whether a motion for leave to amend is prejudicial, made in bad faith, would cause undue delay, or is futile under Rule 15(a); but once the district court sets a schedule for pretrial motions pursuant to Rule 16(b), the court must accept all “timely” motions filed before the court-appointed deadline.[6] Even if such a scheme made sense — if a pretrial order changed parties’ expectations regarding the prospect of litigating new facts and legal theories — there is no authority stating that Rule 16(b) preempts Rule 15(a) in cases like this one.
Federal Rule of Civil Procedure 16 has no effect on the operation of Federal Rule of Civil Procedure 15(a) principles in this case. In Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir.1992), we held that Rule 15(a) did not apply, not because Rule 15 is trumped by Rule 16 once the district court filed a pretrial scheduling order, but rather because the party in Johnson had failed to file his motion to join additional parties within the period of time set in the district court’s scheduling order. Id. at 607-08. Put simply, the party could not appeal to the liberal amendment procedures afforded by Rule 15; his tardy motion had to satisfy the more stringent “good cause” showing required under Rule 16. In this case, AmerisourceBergen filed its motion for leave to amend within the deadline set by the district court. Accordingly, as the district court correctly recognized, Ameri-Source Bergen’s motion is subject to the limited constraints placed on motions for leave to amend under Rule 15(a).[7]
Unlike the district courts in Halbert and DCD Programs,[8] the district court in this case provided sufficient “justifying reasons” for denying AmerisourceBergen’s leave to amend. In a detailed order on January 6, 2004, the district court held that AmerisourceBergen’s motion to amend its reply and allege that non-Epo-gen drugs (Procrit) that it had purchased from Dialysist West were counterfeit was *953 both untimely and prejudicial to Dialysist West.[9]
In assessing timeliness, we do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, we also inquire “whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.” Jackson, 902 F.2d at 1388; see also Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1492-93 (9th Cir.1987), vacated on other grounds by Union Oil Co. of California v. Sierra Club, 485 U.S. 931, 108 S.Ct. 1102, 99 L.Ed.2d 264 (1988). We have held that an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable. See Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir.1991) (citing Jackson, 902 F.2d at 1388).
In this case, fifteen months passed between the time AmerisourceBergen first discovered the possibility that the Procrit was tainted and its assertion of this theory in the motion for leave to amend. Even more detrimental to AmerisourceBergen’s motion for leave to amend, however, is the fact that AmerisourceBergen had admitted only three months before that the products for which it had not paid Dialysist West, including Procrit, were genuine. At the time AmerisourceBergen filed its reply in May 2003, it had all the information necessary to raise the affirmative defense it now pursues: AmerisourceBergen knew about the counterfeit Procrit on the pharmaceuticals market, acknowledged that it had purchased Procrit from Dialysist West during that period, and had previously filed suit because it believed that it had purchased counterfeit drugs from Dialysist West. Although AmerisourceBergen vigorously protests the denial of its motion for leave to amend, it has never provided a satisfactory explanation of why, twelve months into the litigation, it so drastically changed its litigation theory.
Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its “tainted product” theory in its original complaint or reply.[10] Allowing AmerisourceBergen to “advance different legal theories and require proof of different facts” at this stage in the litigation would have prejudiced Dialysist West and unfairly delayed Dialysist West’s collection of a judgment worth approximately $2.2 million. Jackson, 902 F.2d at 1387; see also Chodos v. West Publ’g Co., 292 F.3d 992, 1003 (9th Cir.2002) (upholding district court’s denial of leave to amend fraud claim where plaintiff had facts prior to first amendment and amendment was both *954 prejudicial and dilatory); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990) (upholding denial of leave to amend on the basis of dilatoriness and prejudice where Morongo Indians introduced new legal theory well into the litigation). AmerisourceBergen’s motion to amend its reply closely followed Dialy-sist West’s challenge to AmerisourceBer-gen’s claim for equitable setoff and motion for final judgment under Rule 54(b) as well as the addition of seven new parties to the Epogen litigation. We will not speculate whether AmerisourceBergen’s sudden change in tactics was gamesmanship or the result of an oversight by counsel, but we do conclude that the district court did not abuse its discretion in denying Amerisour-ceBergen’s motion for leave to amend.
C. Certification of Final Judgment
AmerisourceBergen also appeals the district court’s certification of final judgment on Dialysist West’s counterclaim under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that final entry of judgment should be made on individual claims in multiple claim suits “upon an express determination that there is no just reason for delay.” Fed.R.Civ.P. 54(b). Review of a district court’s certification of a final judgment involves a two-step process. See Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 12, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). In the first step, we review the district court’s entry of judgment de novo and evaluate “such factors as the interrelationship of the claims so as to prevent piecemeal appeals.” See Gregorian v. Izvestia, 871 F.2d 1515, 1519 (9th Cir.1989). The second step of review requires an assessment of the equities. We apply the “substantial deference” standard, reversing the district court only if we find the district court’s conclusions clearly unreasonable. Id.
The district court found that there was no risk of duplicative effort by the courts because any subsequent judgments in this case would not vacate its judgment on Dialysist West’s counterclaim. See Curtiss-Wright, 446 U.S. at 8, 100 S.Ct. 1460 (holding that proper factors for 54(b) review include “whether the claims for review were separable from the others ... and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once”). We agree. Because Dialysist West’s counterclaim to recover for non-Epogen sales was not legally or factually related to AmerisourceBer-gen’s Epogen claim, no court need revisit this judgment. See Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d 962, 965 (9th Cir.1981).
AmerisourceBergen contends that, as a matter of equity, the district court’s certification of its judgment on Dialysist West’s counterclaim should not be upheld because Dialysist West is insolvent. We recognize that insolvency is a factor that should weigh against the final entry of judgment on Dialysist West’s counterclaim. See Reiter v. Cooper, 507 U.S. 258, 270, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (acknowledging that “even a ‘threat of insolvency’ of the party seeking separate judgment is a factor weighing against it”). But as the Supreme Court held in Reiter: “[W]e cannot say that insolvency is an absolute bar [to certification].” Id.; see also Shintom Am. Inc. v. Car Tels. Inc., 45 F.3d 1107, 1110 (7th Cir.1995) (affirming district court’s entry of final judgment under 54(b) despite the “precarious financial condition and potential insolvency of the plaintiff’).
In weighing the equities of Rule 54(b) certification, the district court concluded that certification was warranted because this result: (1) aligned with the setoff *955 principles of the UCC; (2) helped avoid unreasonable delay; and because (3) AmerisourceBergen owed Dialysist West approximately $2.2 million. See AmerisourceBergen Corp., No. CIV-02-1472 PHX JWS, slip op. at 14-15. These factors are a sufficient basis for certifying final judgment in favor of Dialysist West. See Schieffelin & Co. v. Valley Liquors, Inc., 823 F.2d 1064, 1065-1067 (7th Cir.1987) (permitting certification where defendant filed counterclaims and plaintiff asserted defenses that were “at least plausible”); C.R. Bard, Inc. v. Med. Elecs. Corp., 529 F.Supp. 1382, 1388 (D.Mass.1982) (stating that court “saw no reason why plaintiff should be denied” use of substantial funds “while awaiting disposition of ... counterclaims”). Moreover, the district court’s decision to favor Dialysist West’s creditors as a matter of equity is not erroneous where AmerisourceBergen has not shown that the debt it seeks to setoff is related to Dialysist West’s counterclaim. See Newbery Corp., 95 F.3d at 1399 (“[Sjetoffs run contrary to fundamental bankruptcy policies such as the equal treatment of creditors and the preservation of a reorganizing debtor’s assets.”).
“The task of weighing and balancing the contending” equities of a case is “peculiarly one for the trial judge.” Curtiss-Wright, 446 U.S. at 12, 100 S.Ct. 1460. It is not the appellate court’s role to “reweigh the equities.” Id. at 10, 100 S.Ct. 1460. The district court’s conclusions for certifying the judgment were not “clearly unreasonable.” We decline to vacate the certification of judgment.
D. Denial of Stay of Enforcement
Federal Rule of Civil Procedure 62(h) provides that when a court has entered final judgment, it may upon its discretion, “stay enforcement of that judgment until the entering of a subsequent judgment or judgments.” Fed.R.Civ.P. 62(h). AmerisourceBergen argues that the district court erred in rejecting its 62(h) motion by conflating Rule 54(b) and Rule 62(h). While it is true that the district court has discretion to grant a stay when it has already certified final judgment,[11] we disagree with AmerisourceBer-gen’s contention that “special circumstances” warrant a stay in this case.
AmerisourceBergen cannot show that failure to provide the stay will cause it to suffer greater harm than Dialysist West will face should it be denied this judgment pending resolution of AmerisourceBer-gen’s outstanding claims. See Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co., 840 F.2d 546, 552 (7th Cir.1988) (“Courts regularly require the payment of undisputed debts while the parties litigate their genuine disputes.”). Moreover, allowing AmerisourceBergen to obtain a stay of the judgment would effectively sanction its self-help tactics. If it does ultimately succeed on its Epogen claim, AmerisourceBergen will have avoided pay *956 ing funds it owes Dialysist West and would unjustifiably leap-frog other creditors. See Pereira v. Cogan, 275 B.R. 472, 475 (S.D.N.Y.2002) (“In fashioning a stay of enforcement, a court looks to general equitable principles.”). The district court did not abuse its discretion in denying Ameri-sourceBergen’s Rule 62(h) motion.[12]
E. Attorney’s Fees & Costs of Appeal
Dialysist West seeks attorney’s fees and the costs of appeal under Arizona Revised Statute section 12-341.01(A). The statute permits an award of attorney’s fees to the “successful party” in “any contested action arising out of a contract.” Ariz.Rev.Stat. § 12-341.01(A) (2006). An award of attorney’s fees under Arizona law is permissive, rather than mandatory. See Wagenseller v. Scottsdale Mem’l. Hosp., 147 Ariz. 370, 710 P.2d 1025, 1049 (1985). The Arizona Supreme Court has held that there are six grounds that must be considered in awarding attorney’s fees to a successful litigant including:
(1) whether the unsuccessful party’s claim or defense was meritorious; (2) whether the litigation could have been avoided or settled and the successful party’s efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought; (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney’s fees.
Id. at 1049. Neither party directly addresses the Wagenseller factors in its briefing, but there is sufficient evidence in the record to conclude that these factors weigh against granting Dialysist West attorney’s fees and costs. First, no evidence has been presented indicating that this ease could have been successfully avoided or settled. Second, the issues in this appeal raise novel questions of contract law. Finally, we do not wish to discourage parties like AmerisourceBergen from litigating opaque issues of contract law for fear of being saddled with opposing counsel’s fees and costs.
AFFIRMED.

. AmerisourceBergen Corp. succeeded Bergen Brunswig Corporation as the plaintiff-appellant in this case.

. The relevant contract clause reads: “BBC may, at its sole option, return all or any part of any product received from Vendor and receive full credit for all returned items.”

. We need not decide whether the district court also erred in denying AmerisourceBer-gen leave to amend its complaint. See 10 Moore’s Federal Practice, § 54.28[3][b], at 54-109 (3d ed. 2005) (“On appeal of a judgment properly entered under Rule 54(b), the court of appeals may review any matter implicated by the judgment, but should not reach beyond the bounds of the judgment.... ”).

. In a joint motion to extend the dates set in the pretrial schedule, counsel for the parties argued that more time was necessary because of disputes regarding what materials should be produced and the complications that arose in the case from the entry of third parties. Joint Motion To Extend Dates in Pretrial Schedule, Bergen Brunswig Corp. v. Dialysist West, Inc., No. CIV 02 1472 PHX JWS, at *3 (D. Ariz. June 19, 2003).

.Judge Tashima's interpretation of Halbert is flawed. Halbert does not stand for the proposition that a district court must always accept a motion for leave to amend simply because the court has established a period, pursuant to Federal Rule of Civil Procedure 16(b), in which the parties may file a leave to amend. Rather, Halbert reiterates that granting or denying a motion for leave to amend remains within the discretion of the district court. Halbert, 33 F.3d at 530. In Halbert the Fifth Circuit did not reverse the district court because the motion for leave to amend was "presumptively timely,” but rather because the district court provided no "justifying reasons” for denying the motion for leave to amend. Id.; see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir.1987) (reversing district court’s leave to amend ruling where the "district court denied the motion without explanation or findings.”).

. Judge Tashima argues that it would be pointless to create a schedule for filing pretrial motions pursuant to Federal Rule of Civil Procedure 16(b), "if the schedule can be disregarded by the court and counsel.” Dissent at 958 n. 1.

. AmerisourceBergen Corp., et al. v. Dialysist West, Inc., No. CIV-02-1472-PHXJWS, slip op. at 6 (D.Ariz. Jan. 6, 2004) ("The effect of filing a motion to amend prior to court ordered deadlines is that Rule 15(a) provides the standard of review, not the ‘good cause' standard articulated in Rule 16.”)

. Halbert, 33 F.3d at 530; DCD Programs, 833 F.2d at 185.

. AmerisourceBergen, No. CIV-02-1472-PHXJWS, slip op. at 4-7. The district court's key holdings on the motion for leave to amend were: 1) AmerisourceBergen did not allege any "newly discovered facts” in the motion nor did the company explain why it waited over a year after filing its complaint before bringing these facts to the attention of the court; and 2) the amendments were prejudicial because they contradicted the company’s "own previous admissions mid-stream,” without any proffered reason.

. See 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (stating that "if [an] ... amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.”).

. See Curtiss-Wright, 446 U.S. at 13, 100 S.Ct. 1460 (“Under this Rule [62(h) ], we assume it would be within the power of the district court to protect all parties by having the losing party deposit the amount of the judgment with the court.... In this way, valid considerations of economic duress and solvency ... can be provided without preventing Rule 54(b) consideration.’’); see also Reiter, 507 U.S. at 270-271, 113 S.Ct. 1213 (similarly endorsing the concept of a Rule 62(h) stay when a court certifies final judgment in favor of an insolvent party). Judge Tashima extensively cites Curtiss-Wright and Reiter for the proposition that the district court abused its discretion by denying AmerisourceBergen’s Rule 62(h) motion. Dissent at 961-962. But while Curtiss-Wright and Reiter both approved (in dicta) the option of a Rule 62(h) stay when a court certifies judgment for an insolvent party, neither case suggested that a district court would abuse its discretion if it declined, to issue a stay under these circumstances.

. Judge Tashima would stay enforcement of the judgment and "protect[] AmerisourceBer-gen's claims against Dialysist West's insolvency.” Dissent at 17343. Section 553 of the Bankruptcy Code governs the equitable right of setoff in bankruptcy law. 11 U.S.C. § 553 (2006). Section 553, however, does not create a right of setoff: "Rather, the section merely recognizes and preserves setoff rights that exist under other applicable law. Thus, the threshold determination in every case involving section 553 is the source of the alleged setoff right.” 5 Myron M. Sheinfeld et al., Collier on Bankruptcy ¶ 553.01 [2] (Lawrence P. King, ed., 15th ed. rev.2005). Ameri-sourceBergen has no right to legal or equitable setoff under Arizona law for the judgment against it on the counterclaim; it therefore does not have a right to setoff under bankruptcy law. See In re HAL, Inc., 196 B.R. 159, 161 (B.A.P. 9th Cir.1996).