**Allan Kenneth MORGAL, Plaintiff,**

v.

**MARICOPA COUNTY BOARD OF SUPERVISORS, Defendant.**

**No. CIV 07–0670–PHX–RCB.**

United States District Court, D. Arizona.

June 6, 2012.

Allan Kenneth Morgal, Tucson, AZ, pro se.

## ORDER

ROBERT C. BROOMFIELD, Senior District Judge.

On April 3, 2012, the Honorable Edward C. Voss, United States Magistrate Judge ("the Magistrate Judge"), denied plaintiff's Motion for Leave to File a[n] Amended Complaint (Doc. 140). Ord. (Doc. 144) at 2:16–17 [1]. Currently pending before the court are plaintiff *pro se* Allan K. Morgal's timely filed objections to that denial (Doc. 147).

**1.** For ease of reference, all citations to page numbers of docketed items are to the page assigned by the court's case management and electronic case filing (CM/ECF) system.

## Background

Assuming familiarity with the prior proceedings, as relevant here, it is only necessary to recount what transpired on appeal to the Ninth Circuit Court of Appeals and thereafter.

The district court granted summary judgment in favor of, among others, the defendant Maricopa County Board of Supervisors ("the Board"). In so doing, the district court reasoned that plaintiff, who is challenging healthcare services at two Maricopa County jails, did not present any "evidence of a pervasive County policy of denying adequate medical care." Memo. (Doc. 122–1) at 3.[2] The district court held that its grant of summary judgment "rendered moot[ ]" four pending motions *in limine* and plaintiff's "Motion to Conduct In Camera Review[.]" Ord. (Doc. 116) at 11:10–16.

On his *pro se* appeal, the Ninth Circuit found that "[w]hen the district court granted summary judgment for the [Board]," plaintiff "had under submission five requests that the district court order the [Board] to produce a specified official report purporting to identify specific systemic problems with healthcare services at the Maricopa County Jail." Memo. (Doc. 122–1) at 2–3. In that regard, plaintiff Morgal "submitted" to the Ninth Circuit "a copy of a document dated February 24, 2006 entitled 'Revised Accreditation Report on the Health Care Services at Maricopa County Sheriffs [sic] Office–Detention Bureau' and naming the National Commission on Correctional Health Care [ ("NCCHC") ] as the author." *Id.* at 3 n. 1. The Ninth Circuit "supplement[ed] the record to include th[at] [2006 NCCHC report] only for the limited purpose of identifying it as the subject of Morgal's discovery submissions to the district court[.]" *Id.* at 3 n. 1 (citation omitted). In light of those five unresolved discovery "requests," the Ninth Circuit held that summary judgment in the Board's favor was improper. That Court thus "vacate[d] and remand[ed] for further proceedings, including, if applicable, resolution of any discovery

**2.** After Judge Murguia's elevation to the Ninth Circuit Court of Appeals, the present case was reassigned to this court. Doc. 126.

request by either party relating to the [February 24, 2006] NCCHC report." *Id.* at 3. The Ninth Circuit's memorandum was filed on July 8, 2011, and the judgment took effect that date. *See* Docs. 122–1; and Mandate (No. 09–17313) at 1. The mandate did not issue though until August 8, 2011.

More than a month later, on September 15, 2011, plaintiff filed three separate motions, including a motion to re-open discovery, which had been closed since March 26, 2008. *See* Ord. (Doc. 12) at 2, ¶ 6. The primary basis for that motion was plaintiff's claim that the "discovery" of the 2006 NCCHC report "led to relevant material facts requiring [the] depositions" of two former directors of Correctional Health Services ("CHS"), a Supervisors member, the head of the Office of Management and Budget, and the Deputy County Manager. Mot. (Doc. 123) at 2. In denying that motion, the Magistrate Judge observed that the plaintiff just as easily could have taken the depositions of those individuals earlier, "during the discovery phase[.]" Ord. (Doc. 133) at 2:17. Furthermore, plaintiff did not offer any reason why he did not do that. The Magistrate Judge also explained that "[p]laintiff's recent receipt of the NCCHC report did nothing [to] change what he needs to prove to prevail in this action and thus provides no basis to re-open discovery to allow these additional depositions." Ord. (Doc. 133) at 2:14–16.

On December 19, 2012, approximately eleven days after denial of that motion to re-open discovery, plaintiff filed a motion seeking leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a). *See* Mot. (Doc. 134) at 1. Plaintiff filed that motion even though, pursuant to the Rule 16 Scheduling and Discovery Order ("Rule 16 Order"), the deadline for amending the complaint was October 26, 2007. *See* Ord. (Doc. 12) at 2, ¶ 4. In seeking leave to amend, plaintiff claimed, as he had before, that the defendant was "misle[a]d[ing] the Court as to the dating of the [NCCHC] report and its contents." Mot. (doc. 134) at 1. Plaintiff likewise argued, again, as he had previously, that the defendant should not "be rewarded" for purportedly not "disclosing relevant documentation[,]" such as the 2006 NCCHC report,

"that was requested prior to the close of discovery." *Id.* at 2 and 1. Plaintiff sought leave to amend his complaint to include the following "facts and others[:]"

> The [2006 NCCHC] report illustrated that the ... Supervisors were well aware of problems with medical treatment at the county jails. [The Supervisors] w[ere] well aware of staff shortages that fell below federal guidelines and did nothing to correct the problem. Defendant states that the accreditation with NCCHC was in good standing when in fact during the timeframes [sic] of the complaint the County Jails were placed on probation and the accreditation was later completely rescinded.

*Id.* at 2. The Magistrate Judge, agreeing with the defendant, denied plaintiff's request to file an amended complaint because plaintiff did not attach as an exhibit "a copy of the proposed amended pleading[ ]" as LRCiv 15.1 requires. *See* Ord. (Doc. 139) at 1:21–22.

Roughly two weeks after the denial of that request to amend, on February 21, 2012, plaintiff again sought leave to amend his complaint. The asserted basis for amendment was plaintiff's claim that "[t]he Defendants [sic] post-event conduct includes withholding [sic] critical information that the Plaintiff repeatedly requested prior to the close of discovery." Mot. (Doc. 140) at 1. Plaintiff's motion included nothing more, but this time he did attach a copy of his proposed amended complaint ("the AC").

Depicting plaintiff's motion to amend as "nothing more than an attempt ... to make an end-run around" the prior order denying his request to re-open discovery, the Board strongly opposed allowing amendment. *See* Resp. (Doc. 141) at 1:20–21. In opposing amendment, the Board primarily argued that plaintiff's motion was untimely, and allowing amendment at this late date would be not only prejudicial, but also futile.

Denying leave to amend, the Magistrate Judge looked not only to plaintiff's bald reference to the Board's alleged "with-holding [sic] [of] critical information," but also to some of the AC's newly added allegations. *See* Ord. (Doc. 144) at 1:21. The Magistrate

Judge observed that plaintiff alleged that the Board had "hired outside consultants" who made recommendations, such as changing to an electronic records system[,]" which "BOS disregarded . . . and cho[ ]se not" to do. *See* Prop. Amend. Co. (Doc. 140–1) at 15. The Magistrate Judge further observed that plaintiff's AC includes an allegation that in February 2006, "the jails['] accreditation with the [NCCHC] was placed on probation after a routine review uncovered major deficiencies." *See id.* at 17. The AC likewise includes an allegation that a member of the Board allegedly admitted that an electronic medical records system should have been installed earlier. *See id.*

The Magistrate Judge noted that since the 2007 commencement of this action, plaintiff has been claiming that Correctional Health Services "had a policy or custom of providing inadequate health care to jail inmates[.]" *Id.* at 2:6–8 (citation omitted). The Magistrate Judge concluded, however, that "[p]laintiff's reference to Defendant withholding information and to the NCCHC in his proposed amended allegations d[id] not add to [that] claim." *Id.* at 2:8–9. Given the Magistrate Judge's remark that "this case was remanded by the Ninth Circuit to resolve any discovery requests relating to the [NCCHC] report, if applicable[,]" evidently, in denying leave to amend, the scope of the remand also was a consideration. *See* at 2:12–13.

Although he broadly contends that the order denying him leave to amend was "both . . . clear error and . . . contrary to law[,"] plaintiff objects only to the Magistrate Judge's conclusion that the " 'amended allegations d[id] not add to his claim[.]' " Obj. (Doc. 147) at 1 (quoting Ord. (Doc. 144) at 2:9). From plaintiff's standpoint, the 2006 NCCHC report "adds a great deal to the original complaint as it shows that the [Board] ha[d] been aware of constitutional violations within the County jails for decades and refused to fund both staff positions and a

record keeping system due to costs." *Id.* at 1–2. Plaintiff claims, although he does not elaborate, that he will "suffer a great injustice and prejudice" if this court affirms denial of his motion for leave to amend. *See id.* at 2. Plaintiff reiterates his firm belief that the Supervisors' "[c]ounsel has not cooperated in good faith with discovery[.]" *Id.* (emphasis in original).

### *Discussion*

### I. *Preliminary Issues*

### A. *Plaintiff's Reply*

Before addressing plaintiff's objections to the denial of his motion seeking leave to amend, there are two preliminary issues. The first is plaintiff's mistaken belief that he "filed a *timely* reply that" the Magistrate Judge did "not review[ ][.]" Obj. (Doc. 147) at 1 (emphasis added). In short, as fully explained below, that reply was untimely. Thus, the Magistrate Judge had no obligation to consider it.

■ On February 21, 2012, plaintiff filed his motion for leave to file an amended complaint. *See* Mot. (Doc. 140) at 1. In accordance with LRCiv 7.2(c), the Board timely filed its response on March 14, 2012. As LRCiv 7.2(d) allows, plaintiff then had until March 26, 2012,[3] by which to file his reply. Plaintiff did not do that however; he filed his reply on April 3, 2012. Because the plaintiff's reply was untimely, it was not clear error for the Magistrate Judge not to consider that reply. What is more, although filed on April 3, 2012, plaintiff's untimely reply was not entered until April 4, 2012. *See* Reply (Doc. 146); and the Notice of Electronic Filing associated therewith. Hence, because the Magistrate Judge's order was filed on April 3, 2012, and entered at 3:37 p.m. that same date, as his order indicates, the Magistrate Judge could not have known

---

3. That Rule allows a moving party to file a reply memorandum within seven days after service of the responsive memorandum. Here, the Board filed and served its responsive memorandum on March 14, 2012. Computing the time in accordance with Fed.R.Civ.P. 6(a)(1)(A), that date, as "the event that triggers the period[,]" is excluded. Based upon the type of service, pursuant to

Fed.R.Civ.P. 6(d), plaintiff had three additional days, beyond the seven under LRCiv 7.2(d), in which to file a reply. Because the last day of the period was on a Sunday, as Fed.R.Civ.P. 6(a)(1)(C) permits, plaintiff had until the next day "that is not a Saturday, Sunday, or legal holiday[,]" *i.e.*, until Monday, March 26, 2012, by which to file his reply.

of that untimely filing. *See* Ord. (Doc. 144) at 1:17–18.

### B. *Denial of Motion to Re-open Discovery*

■ The second preliminary issue also pertains to timeliness. Plaintiff further claims that the Magistrate Judge's earlier denial of plaintiff's motion to re-open discovery, "is in error contrary to law[.]" Obj. (Doc. 147) at 2. That denial order was filed and served on December 8, 2011. *See* Ord. (Doc. 133). Pursuant to Fed.R.Civ.P. 72(a), plaintiff thus had 14 days "after being served with a copy[ ]" of that order in which to "serve and file objections" thereto. In other words, again computing the time in accordance with Rule 6, plaintiff had until December 26, 2011, in which to file and serve any objections to the order denying his motion to reopen discovery. Plaintiff did not file any objections within that time frame, however. Instead, he waited nearly three and a half months, until April 13, 2012, when he filed his objections to the order denying leave to amend. Thus, to the extent plaintiff is objecting to the Magistrate Judge's December 8, 2011, order denying plaintiff's motion to re-open discovery, such objection is untimely.

## II. *Leave to Amend*

### A. *Standard of Review*

■ "Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)." *Cazares v. Morris*, 2011 WL 2414543, at *2 (D.Ariz. June 16, 2011) (citing, *inter alia*, *JJCO, Inc. v. Isuzu Motors America, Inc.*, 2009 WL 3818247, *2 (D.Haw. Nov. 12, 2009) (magistrate judge's denial of a motion for leave to amend complaint is not a dispositive ruling)) (citing, in turn, *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 n. 1 (9th Cir.1985), *superseded by statute on other grounds as recognized in Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir.1996) (noting that the plaintiff's motion for leave to amend its Complaint was properly treated as a nondispositive motion when the magistrate judge granted the plaintiff's motion)). There are circumstances, such as when a "magistrate judge denies a party the opportunity to assert a new claim or defense[,]" or "when the denial is specifically premised on futility[,]" that courts have "view[ed] a magistrate judge's denial of a motion for leave to amend as a dispositive ruling." *JJCO, Inc.*, 2009 WL 3818247, at *3 (citing cases). That "view is not universal[,]" as the court in *JJCO, Inc.* astutely observed however. *Id.* at *3 (citing *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir.2006) (finding a magistrate judge's denial of a motion to amend on grounds of futility to be nondispositive and subject to review for clear error by the district court)).

■ Even if that view was universally held, in the present case, the Magistrate Judge's denial of leave to amend did not deprive the plaintiff of "the opportunity to assert a *new* claim or defense[.]" *See JJCO, Inc.*, 2009 WL 3818247, at *3 (citation omitted) (emphasis added). Nor did the Magistrate Judge "specifically premise[ ]" denial of leave to amend upon futility. *See id.* (citations omitted). Therefore, his order denying plaintiff's motion seeking leave to amend is non-dispositive under this line of reasoning.

■ Given that the challenged order is non-dispositive, plaintiff is correct—the clearly erroneous or contrary to law standard applies here. *See* 28 U.S.C. § 636(b)(1)(A) ("[a] judge … may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law[ ]"); Fed.R.Civ.P. 72(a) (a district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law[ ]"). " 'The clearly erroneous standard applies to the magistrate judge's factual findings[.]' " *Williams v. U.S.*, 2012 WL 406904, at *3 (quoting *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D.Cal.2007)). On the other hand, " 'the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo.' " *Id.; see also Jones v. Corrections Corp. of America*, 2011 WL 1706838, at *4 (D.Ariz. May 5, 2011) (citations and internal quotation marks omitted) ("[T]he contrary to law standard

... permits independent review of purely legal determinations by the magistrate judge.")

In the present case, plaintiff is not challenging any factual findings by the Magistrate Judge. Rather, he is challenging the Magistrate Judge's legal conclusion denying leave to amend. Thus, applying the contrary to law standard, this court will engage in an independent, de novo review of that denial.

### B. Governing Legal Standards

"A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Forouhar v. Asa*, 2011 WL 4080862, at *1 (N.D.Cal. Sept. 13, 2011) (citation and internal quotation marks omitted). Likewise, "a magistrate judge's decision is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Gabriel Technologies Corp. v. Qualcomm Inc.*, 2012 WL 849167 at *1 (S.D.Cal. March 13, 2012) (citation and internal quotation marks omitted).

The Magistrate Judge denied leave to amend primarily because "Plaintiff's reference to [the Board] with-holding information and to the NCCHC in his proposed amended allegations d[id] not add to his claim." Ord. (Doc. 144) at 2:8–9. In denying leave to amend, however, the Magistrate Judge overlooked the fact that a Rule 16 scheduling order had been filed in this case. That omission was contrary to law because, as explained herein, at least in the first instance, plaintiff's motion to amend should have been examined in light of Fed.R.Civ.P. 16(b)(4) and the case law construing it.

In the Ninth Circuit, where, as here, a motion for leave to amend is filed after entry of a Rule 16 scheduling order,[4] the movant cannot "appeal to the liberal amendment procedures afforded by Rule

15[.]" *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir.2006). Instead, the movant must "satisfy the *more stringent* 'good cause' showing required under Rule 16." *Id.* (emphasis in original); *see also Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n*, 2011 WL 4498975, at *3 n. 3 (D.Haw. Sept. 26, 2011) (The plaintiff "had to satisfy the more rigorous 'good cause' standard established by Rule 16[ ]" where he filed that motion outside the time period set in the scheduling order.) Rule 16(b)(4) expressly states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order ... will not be disturbed unless they evidence a clear abuse of discretion." *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir.2011), *cert. denied sub nom. C.F. v. Corbett*, —— U.S. ——, 132 S.Ct. 1566, 182 L.Ed.2d 168 (2012) *Id.* at 984 (citations and internal quotation marks omitted) (omission in original).

"A court's evaluation of good cause is *not* coextensive with an inquiry into the propriety of the amendment under ... Rule 15." *Mammoth Recreations*, 975 F.2d at 609 (citation and internal quotation marks omitted) (emphasis added). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment." *Id.* Put in a slightly different way, " '[t]he focus of the inquiry is upon the moving party's reasons for seeking modification.' " *Farnan*, 654 F.3d at 984 (quoting *Johnson*, 975 F.2d at 609).

---

4. As in *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir.1992), plaintiff Morgal "did *not* specifically request that the court modify its scheduling order; he merely [sought leave] to amend his complaint." *See id.* at 608 (emphasis in original). Nonetheless, this court will follow the approach endorsed by the Ninth Circuit in *Johnson* and construe plaintiff Morgal's mo-

tion for leave to amend as a motion to modify the scheduling order under Rule 16. *See id.; see also Zest IP Holdings, LLC v. Implant Direct Mfg., LLC,* 2012 WL 175411, at *1 n. 1 (S.D.Cal. Jan. 2012) (finding that *Johnson* permits "construing a motion to amend a pleading under Rule 15 as a motion to modify a scheduling order under Rule 16[ ]").

Courts within this Circuit "have articulated and undertaken [a] three-step inquiry in resolving the question of 'diligence' in the context of determining good cause under Rule 16[.]" *Grant v. United States,* 2011 WL 5554878, at *4 (E.D.Cal. Nov. 15, 2011), *adopted,* 2012 WL 218959, at *1 (E.D.Cal. Jan. 23, 2012). Under that inquiry:

[T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that [ ]he was diligent in assisting the [c]ourt in creating a workable Rule 16 order; (2) that h[is] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding h[is] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [ ]he was diligent in seeking amendment of the Rule 16 order, once it became apparent that [ ]he could not comply with the order.

*Id.* (quoting *Jackson v. Laureate, Inc.,* 186 F.R.D. 605, 608 (E.D.Cal.1999)) (other citation omitted). The diligence obligation is ongoing. "Parties must 'diligently attempt to adhere to that schedule throughout the subsequent course of the litigation.'" *Trejo v. City of Shafter,* 2011 WL 6130894, at *1 (E.D.Cal. Dec. 8, 2011) (quoting *Jackson,* 186 F.R.D. at 607) (other citation omitted).

The Ninth Circuit has also recognized that, "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson,* 975 F.2d at 609 (quoting Fed.R.Civ.P. 16 advisory committee's note). By the same token though, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* Finally, while "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* (citation omitted). "If that party was not diligent, the inquiry should end." *Id.* That is because, "[a]s the Ninth Circuit explained in *Johnson*

..., once the district court has filed a pretrial scheduling order pursuant to Rule 16 ..., a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Laureate,* 186 F.R.D. at 607. That means that if the Rule 16 good cause standard is not met, there is no need to "reach the Rule 15(a) standard." *See B2B CFO Partners, LLC v. Kaufman,* 2011 WL 2713887, at *4 (D.Ariz.2011) (holding that it "need not reach the Rule 15(a) standard[ ]" where plaintiffs did not satisfy the Rule 16(b) standard).

### C. Analysis

On July 26, 2007, a Rule 16 Order was entered in this case. In ordering "that the parties shall comply with the ... deadlines and discovery orders[ ]" enumerated therein, that Order contained the following explicit warning:

**THE PARTIES AND COUNSEL ARE CAUTIONED THAT THE DEADLINES SET FORTH IN THIS RULE 16 SCHEDULING ORDER SHALL BE STRICTLY ENFORCED.**

Ord. (Doc. 12) at 1 (emphasis in original). That Scheduling Order further mandated:

4. Motions to Amend the Complaint, and to join additional parties shall be filed **no later than *Friday, October 26, 2007.***

*Id.* at 2, ¶ 4 (emphasis in original). Plaintiff did not file the motion to amend which is the subject of this court's review until February 21, 2012, however. As explained herein, under these "case-specific circumstances, the 'diligence' inquiry ... turn[s][,]" primarily upon "consideration of [plaintiff's] diligence "between the discovery of new information and the motion to amend[.]" *See Aldan v. World Corp.,* 267 F.R.D. 346, 357 (N. Mar. I.2010).

In seeking leave to modify the Rule 16 Order to allow amendment, plaintiff has the burden of establishing good cause within the meaning of that Rule. Plaintiff's motion is void of any case law, statutes or rules, however.[5] As earlier noted, the sum total of his

---

5. The Board's response did include a legal analysis, but, for the most part, it missed the mark.

That is because the Board focused almost exclusively upon untimeliness, prejudice and futility—

motion is plaintiff's bald assertion that the Board's "post-event conduct includes withholding [sic] critical information that the Plaintiff repeatedly requested prior to the close of discovery." Mot. (Doc. 140) at 1. The Board's opposition raised the specter that Rule 16's good cause standard has some relevancy here.[6] Given the absence of a reply, and plaintiff's failure to address good cause initially, clearly, he has made no attempt to establish the requisite good cause.

Plaintiff's silence on that issue does not necessarily preclude a finding that he acted diligently with respect to the first two steps of the good cause inquiry, though. As to the first step, there is nothing to suggest that plaintiff was not "diligent in assisting the [c]ourt in creating a workable Rule 16 order[.]" *See Grant*, 2011 WL 5554878, at *4 (internal quotation marks and citation omitted). As an aside, the court observes that given the Board's seeming awareness that "good cause" is the governing legal standard here, presumably, if it believed that plaintiff had not been diligent in this regard, the Board would have so argued, but it did not.

As to the second good cause factor, as the record shows, plaintiff's noncompliance with the Rule 16 Order's October 26, 2007, deadline for filing his motion to amend "occurred ... because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference[.]" *See id.* (internal

quotation marks and citations omitted). In particular, when the parties entered into the Rule 16 Order on July 26, 2007, plaintiff could not have anticipated the motion practice which would ensue, beginning in the spring of 2009, with respect to the 2006 NCCHC report. Nor could he anticipate that he would not receive that report until roughly two and a half years later, in January, 2010, during the pendency of his appeal. *See* Appellant's Reply (No. 09–17313) (Doc. 17) at 3.

Despite the foregoing, plaintiff's good cause showing falters, and ultimately fails, at the third step of the inquiry. Plaintiff has not met his burden of showing that he "was diligent in seeking amendment of the Rule 16 order, once it became apparent that [ ]he could not comply with the order." *See Grant*, 2011 WL 5554878, at *4 (citations omitted). There is more than sufficient proof in the record that, from plaintiff's standpoint, the 2006 NCCHC report was important to his theory of liability in this lawsuit, and that it had been well before February 21, 2012, when he filed the motion to amend which now is under review. Since April 13, 2009, plaintiff had been attempting to procure that report,[7] and eventually he did. On May 10, 2010, plaintiff supplied the 2006 NCCHC report to the Ninth Circuit on his appeal. *See* Appellant's Reply (No. 09–17313) (Doc. 17) at 2, ¶ 3. Thus, obviously plaintiff was in possession of the 2006

---

factors which, in accordance with *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), typically are considered when deciding the propriety of allowing amendment under Fed.R.Civ.P. 15(a). Because plaintiff's motion to amend was filed after entry of the Rule 16 Order, as explained above, as a prerequisite to amendment, plaintiff must satisfy Rule 16(b)(4)'s more stringent good cause standard. Only if plaintiff meets that burden, does Rule 15(a) become relevant. Therefore, the bulk of the Board's response was not directly relevant.

6. Opposing amendment, the Board, purporting to quote from *Scognamillo v. Credit Suisse First Boston, LLC*, 587 F.Supp.2d 1149, 1155–56 (N.D.Cal.2008), stated, " 'Plaintiff has not addressed the 'good cause' standard and has offered no justification for the delay in seeking to amend his complaint. Absent a showing of good cause, Plaintiff's motion to amend his complaint is denied.' " Resp. (Doc. 141) at 2:22–24. That

quote appears nowhere in *Scognamillo*, however. So, although the Board recognizes that Rule 16's good cause standard is implicated here, it did not provide any pertinent case law. Likewise, the Board did not analyze diligence, which is central to the good cause inquiry.

7. In an April 13, 2009, letter which the Supervisors construed as a "Motion to Produce[,]" plaintiff requested, among other documents, an NCCHC report. *See* Def.'s Resp. to Mot. to Produce (Doc. 66–1) at 1:28–2:1. Because that letter is not part of the record, there is no way of knowing for certain whether at that time plaintiff was seeking the 2006 version of the NCCHC's report. Further muddying the waters is the fact that in its response, the Board objected to the production of NCCHC reports for years other than 2006. As this dispute continued, however, it became clear that, despite what the Board presumed, all along plaintiff had been seeking the 2006 version of the NCCHC report.

NCCHC report when the mandate was filed on August 8, 2011. Moreover, on September 15, 2011, when plaintiff filed three post-appeal motions, he specifically relied upon that report in two of those motions. One of plaintiff's bases for seeking appointment of counsel was the Board's alleged denial of the existence of the 2006 NCCHC report. Mot. (Doc. 124) at 1. That report also formed the basis for plaintiff's motion to re-open discovery, also filed that same date.

■ Thus, under the particular facts of this case, plaintiff has not shown that he acted diligently when, instead of seeking amendment at least by September 15, 2011, when he filed three other post-appeal motions—two of which were based in part upon the 2006 NCCHC report—he waited until December 19, 2011, more than four months after entry of the mandate, to file his first motion to amend; and this second motion to amend was not filed until more than six months after entry of the mandate. *Cf. Laureate*, 186 F.R.D. at 609 (denying plaintiff's motion for leave to amend her complaint because it was not supported by good cause in that, *inter alia*, plaintiff was "silent as to whether any new and previously unavailable information justified the requested amendment[ ]" and she "fail[ed] to show diligence in filing her motion to amend[ ]") (citation and footnote omitted).

The present case thus stands in sharp contrast to cases such as *Navarro v. Eskanos & Adler*, 2006 WL 3533039, at *2 (N.D.Cal. Dec. 7, 2006), and *Rants v. WHPacific Inc.*, 2010 WL 4622164, at *2 (W.D.Wash. Nov. 4, 2010), where, based upon a showing of good cause, the courts allowed amendment after the filing of a Rule 16 order. Plaintiff Navarro filed her motion to amend "within two weeks of discovering [through depositions of defendants' employees] the basis of her new allegations." *Navarro*, 2006 WL 3533039, at *2. The *Navarro* court reasoned that "[p]laintiff showed diligence by seeking leave to amend her complaint upon learning of the basis of her new claims." *Id.* The same cannot be said of plaintiff Morgal who, although he had the basis for his purported new claims in his possession on August 8,

2011, waited considerably longer than two weeks before seeking leave to amend.

Acting with similar haste as plaintiff Navarro, plaintiff *Rants* likewise acted diligently by filing her motion to amend to add two new defendants less than two weeks after the deadline for the filing of any such motions. *See Rants*, 2010 WL 4622164, at *2. Plaintiff Morgal did not act with similar promptness. He did not seek leave to amend at the first available opportunity after entry of the mandate. Additionally, allowing amendment at this late date would "create ... meaningful issues of case management and ... impair the efficient adjudication of th[is] action[ ]" given that this case has been pending for more than five years; the time for discovery has long since passed; and the Board's summary judgment motion on remand is pending. *See id.* at *2 (citation omitted). These factors bolster a finding of lack of diligence in the present case. Consequently, unlike *Rants*, where allowing plaintiff to amend her complaint might have "assist[ed] [in] the efficient adjudication of th[at] action because" the addition of two defendants "prevent[ed] the potential for multiple lawsuits[,]" adding allegations based upon the 2006 NCCHC report at this late date would have the opposite effect here. *See id.*

■ Lastly, the court notes that the sole basis for plaintiff's motion seeking leave to file an amended complaint was, as mentioned earlier, his bald assertion that "[t]he Defendants [sic] post-event conduct includes withholding [sic] critical information that the plaintiff repeatedly requested prior to discovery." Mot. (Doc. 140) at 1. Generously construing that assertion as an attempt to show good cause, still, plaintiff has not satisfied his burden in that regard. That unsupported contention does not come close to establishing good cause within the meaning of Fed. R.Civ.P. 16(b)(4).

Moreover, in June and July 2009, when the issue of disclosing the 2006 NCCHC report was the subject of several of the parties' motions, plaintiff continually referred to the Board's alleged failure to disclose and mislead him with respect to that report, among other documents. *See, e.g.*, Not. of Mis-Representation (Doc. 70) at 1 ("Counsel has

still not forwarded or disclosed the NCCHC report that has been requested numerous times over the last 60 days."); Pl.'s Resp. to Mot. *in Limine* (Doc. 95) at 1 (accusing defense counsel of "hiding" document and "providing false information to the Court" regarding, among other things, the 2006 NCCHC report); Pl.'s Reply (Doc. 91) at 2–3 (claiming that defense counsel "had a duty to disclose but cho[ ]se to hide[,]" among other documents, the 2006 NCCHC report); and Mot. to Conduct in Camera Review (Doc. 101) at 1–2 (maintaining that defense counsel "mislead[ ] this Court as to the reports[,]" including the 2006 NCCHC report). Clearly, plaintiff was not diligent in waiting more than six months after the issuance of the mandate to seek amendment on his long-held theory that defense counsel withheld the 2006 NCCHC report.

 Because plaintiff Morgal has not met his burden of showing good cause under Rule 16, "the inquiry should end." *See Johnson*, 975 F.2d at 609. As the Ninth Circuit permits, however, this court will also consider the "existence or degree of prejudice" to the Board, as the party opposing modification, as those factors "might supply additional reasons to deny a motion[ ]" to modify under Rule 16. *Id.* When the court does that, it finds that allowing amendment at this late date likely would require re-opening discovery which, in turn, would be prejudicial to the Board, and further delay the resolution of this case. This is all the more so given the Board's pending summary judgment motion filed in light of the remand. *See Melbye v. Accelerated Payment Technologies, Inc.*, 2011 WL 6754088, at *3 (S.D.Cal. Dec. 22, 2011) (plaintiff did not demonstrate good cause where, among other things, the "parties ha[d] already engaged in, and completed, discovery[;]" and defendant had "also filed a summary judgment motion[ ]") So, although not critical to its finding that plaintiff did not act diligently in seeking leave to amend, in the present case, this prejudice factor does provide an additional reason for denying that motion.

To conclude, after engaging in an independent, *de novo* review of the Magistrate Judge's denying plaintiff's motion for leave to a file an amended complaint, although this court reaches the same conclusion as did the Magistrate Judge—that plaintiff's motion must be denied—it does so for different reasons. As thoroughly discussed above, the basis for this court's denial is plaintiff's failure to satisfy Fed.R.Civ.P. 16(b)(4)'s good cause standard.

### Conclusion

To the extent plaintiff is objecting to the Magistrate Judge's December 8, 2011, order denying plaintiff's motion to re-open discovery, such objection is untimely. Accordingly, the court overrules that objection. Further, because plaintiff Morgal has not met his burden of showing good cause under Fed. R.Civ.P. 16(b)(4), this court finds that plaintiff's "Motion for Leave to File a[n] Amended Complaint" was properly denied, albeit for different reasons than the Magistrate Judge offered.

Further, in light of this court's May 1, 2012, order vacating the time frames set forth in the Magistrate Judge's March 23, 2012, order, and "Defendant's Notice of Service of Renewed Motion for Summary Judgment" (Doc. 151), the court hereby **ORDERS** that:

(1) plaintiff shall have **thirty (30) days** from date of entry of this order in which to file and serve a response thereto, if any. If plaintiff desires to file a response, except for the time frames set forth therein, such response otherwise shall comport with the Magistrate Judge's March 23, 2012, Order (Doc. 143), a copy of which is attached hereto and incorporated herein; and;

(2) within **fifteen (15) days** after service of plaintiff's response, if any, the defendant may file a reply, if any. DATED this 5th day of June, 2012.