Lee v. Coastal Agrobusiness, Inc., 2012 NCBC 37.

STATE OF NORTH CAROLINA         IN THE GENERAL COURT OF JUSTICE
                                          SUPERIOR COURT DIVISION
COUNTY OF SAMPSON                          09 CVS 1719

| | |
|---|---|
| ARTHUR CALE LEE and KEVIN JACOB LEE, a partnership d/b/a DOUBLE L FARMS, ARTHUR T. LEE and on behalf of all others similarly situated,<br><br>                Plaintiffs<br><br>       v.<br><br>COASTAL AGROBUSINESS, INC. and INTX MICROBIALS, LLC,<br><br>                Defendants | **OPINION AND ORDER** |

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon (a) Defendant Coastal AgroBusiness, Inc.'s Motion for Summary Judgment on Counterclaim, (b) Defendant Coastal AgroBusiness, Inc.'s Motion to Dismiss Arthur T. Lee and (c) Defendant INTX Microbials, LLC's Motion for Summary Judgment as to Claims of Plaintiff Arthur T. Lee (collectively, "Motions"); and

THE COURT, after considering the Motions, arguments, briefs, affidavits, other submissions of counsel and appropriate matters of record, CONCLUDES that the Motions should be GRANTED, for the reasons stated herein.

*Brent Adams & Associates, by Brenton D. Adams, Esq. for Plaintiffs.*

*Colombo, Kitchin, Dunn, Ball & Porter, LLP, by W. Walton Kitchin, Esq. and Christian E. Porter, Esq. for Defendant Coastal AgroBusiness, Inc.*

*Wyrick Robbins Yates & Ponton, LLP, by Charles George, Esq. for Defendant INTX Microbial, LLC.*

Jolly, Judge.

I.

PROCEDURAL HISTORY

[1]     On October 16, 2009, Plaintiffs filed their Complaint in this civil action. The Complaint alleges five causes of action ("Claim(s)"): First Claim – Breach of Implied Warranty; Second Claim – Punitive Damages; Third Claim – Compensatory Damages; Fourth Claim – Negligence and Fifth Claim – Unfair and Deceptive Trade Practice.  The Complaint also includes a motion seeking class certification ("Class Motion").

[2]     On November 16, 2009, Defendant Coastal AgroBusiness, Inc. ("Coastal") filed and served an Answer, Motion to Dismiss and Counterclaim.  Coastal's Counterclaim seeks payment from Plaintiffs for unpaid amounts due under open credit accounts.  Coastal also filed separately a Motion to Deny Certification of Class.[1]

[3]     On December 22, 2009, Defendant INTX Microbials, LLC ("INTX") filed and served its Answer ("INTX Answer").

---

[1] On October 6, 2010, Plaintiff filed a motion titled "Plaintiffs' Motion to Continue Hearing on Motion of the Defendant Coastal Agrobusiness, Inc.'s (sic) to Deny Class Certification and, in the alternative, Plaintiffs' Motion for an Order Certifying the Claim."  That motion incorporated the same allegations contained in the Complaint to support class certification.  The court will treat Plaintiffs' October 6, 2010 motion as a renewal of the Class Motion contained in the Complaint.  However, Plaintiffs' Class Motion has not been briefed pursuant to Rule 15.2 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR").  As such, pursuant to BCR 15.11, Plaintiffs' Class Motion may be denied summarily.  In its discretion, the court elects to consider Plaintiffs' Class Motion at a later date, as discussed *infra*.

[4] On March 15, 2010, Coastal filed its Motion for Summary Judgment on Counterclaim ("Coastal Motion for Summary Judgment") and Motion to Dismiss Arthur T. Lee ("Coastal Motion to Dismiss").

[5] On April 8, 2010, Plaintiffs filed a one-page response to the Coastal Motion for Summary Judgment. Plaintiffs also filed the Affidavit of Kevin J. Lee ("April 8 Lee Affidavit") in opposition to the Coastal Motion for Summary Judgment.

[6] On August 25, 2010, INTX filed its Motion for Summary Judgment as to Claims of Plaintiff Arthur T. Lee ("INTX Motion").

[7] On October 4, 2010, Plaintiffs filed a one-page response to the Coastal Motion to Dismiss.

[8] On October 6, 2010, Plaintiffs filed a two-page response to the INTX Motion.[2]

[9] On October 6, 2010, Plaintiffs also filed a brief ("Plaintiffs' Brief") in opposition to "Defendants' Motion for Partial Summary Judgment."[3] Plaintiffs also filed the Affidavits of Kevin J. Lee ("October 5 Lee Affidavit")[4] and Michael J. Healy "in Opposition to the Defendants' Motion for Partial Summary Judgment and In Support of the Plaintiffs' Motion for Summary Judgment."

[10] The court observes that Plaintiffs have filed the following documents in violation of the timing requirements of BCR 15.6 and/or BCR 9.2: (a) Plaintiffs'

---

[2] Plaintiffs failed to file a substantive responsive brief in opposition to the INTX Motion and the Coastal Motion to Dismiss. On October 6, 2010, Plaintiffs also filed a Motion for Extension of Time to File Responses and Brief to Defendants' Motion for Partial Summary Judgment. That motion was untimely and appears to be moot because Plaintiffs actually filed a responsive brief on October 6, 2010.

[3] Plaintiffs' Brief does not specify whether it is made in opposition to the Coastal Motion for Summary Judgment or the INTX Motion. In fact, there is no motion titled "Defendants' Motion for Partial Summary Judgment." However, Plaintiffs' Brief appears to be directed to the Coastal Motion for Summary Judgment, and the court will treat it as such.

[4] There are two Kevin J. Lee Affidavits. The October 5 Lee Affidavit, filed on October 6, 2010, is dated October 5, 2010.

Response to the Coastal Motion to Dismiss; (b) October 5 Lee Affidavit; (c) Healy Affidavit; (d) Plaintiff Arthur T. Lee's Response to the INTX Motion; (e) Plaintiffs' Brief and (f) Plaintiffs' Motion to Extend Time to File Responses and Brief. The court also notes that Plaintiffs have not filed a Motion for Summary Judgment despite the fact they offer the October 5 Lee Affidavit and the Healy Affidavit in "[s]upport of Plaintiffs' Motion for Summary Judgment."

[11]    On October 8, 2010, INTX filed a Motion to Strike or, in the Alternative, Rule 56(f) Affidavit ("Motion to Strike"), requesting that the court strike several documents filed by Plaintiffs. The Motion to Strike is based largely on Plaintiffs' repeated failure to follow the procedural rules of the Business Court, specifically BCR 15.11, which provides that "[i]f a respondent fails to file a response within the time required by [BCR 15], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."

[12]    The court, in its discretion, will consider the above-referenced filings and affidavits submitted by Plaintiffs. INTX's Motion to Strike these filings and affidavits is DENIED.

[13]    Despite the fact that there are no pending motions directed to the merits of Plaintiffs' underlying Claims, Plaintiffs' Brief and affidavits make arguments as to their Claim for breach of implied warranty. The court will not consider Plaintiffs' arguments on the merits of that Claim at this time.

[14]    The court has heard oral argument on the Motions and they are ripe for determination.

II.

FACTUAL BACKGROUND

[15]    Plaintiffs Arthur Cale Lee ("Arthur C. Lee") and Kevin Jacob Lee ("Kevin J. Lee") are general partners in a North Carolina partnership known as Double L Farms[5] ("Partnership").[6]

[16]    Plaintiff Arthur T. Lee, father of Arthur C. Lee and Kevin J. Lee, is not a partner in the Partnership.[7]

[17]    Coastal is a North Carolina corporation with its principal office in Greenville, North Carolina.[8]  Coastal is a merchant that supplies fertilizer, chemicals and other related products for use in agricultural enterprises to the public and the farming community.[9]

[18]    INTX is a limited liability company with its principal office in Kentland, Indiana.[10]  INTX manufactures and distributes inoculants and other products for use in agriculture, including the inoculant N-TAKE.[11]

[19]    In 2008, Plaintiffs[12] purchased N-TAKE from Coastal for use on their 2008 peanut crop.[13]

[20]    N-TAKE is an inoculant that is placed upon peanut seeds for the purpose of enhancing the growth and development of the peanut plant.[14]

---

[5] On October 4, 2010, Plaintiffs filed a Motion to Amend Complaint to change the name of the Partnership from Double Lee Farms to Double L Farms.  On October 11, 2010, the court, ruling from the bench, granted Plaintiffs' Motion to Amend Complaint.  The Amended Complaint subsequently was filed.
[6] Compl. ¶ 1.
[7] *Id.* ¶ 2.
[8] *Id.* ¶ 3.
[9] *Id.* ¶ 8.
[10] *Id.* ¶ 4.
[11] INTX Answer ¶ 6.
[12] As discussed *infra*, only Arthur C. Lee and Kevin J. Lee, as partners of Double L Farms, purchased N-TAKE.  Arthur T. Lee did not individually and directly purchase N-TAKE in 2008.  *See* October 5 Lee Aff. ¶¶ 3-6.
[13] Compl. ¶ 5.

[21]     Plaintiffs allege that they properly applied N-TAKE to their 2008 peanut crop and that the peanut seeds they used were good and did not contain any defects.[15]

[22]     Plaintiffs allege that the N-TAKE they purchased was defective in that it did not contain the proper chemicals and elements necessary to serve its purpose as an inoculant and was not fit for the purpose for which it was sold.[16]

[23]     The Complaint alleges that Plaintiffs suffered damages consisting of the loss of the 2008 peanut crop, the cost of fertilizer and the purchase price of N-TAKE.

[24]     During the period from March 14, 2008, through October 15, 2008, the Partnership purchased various other farm products from Coastal.[17]

[25]     Prior to these purchases, Arthur C. Lee and Kevin J. Lee signed Terms Announcement and Disclosure Statements ("Agreement(s)") and a Guaranty ("Guaranty") with Coastal.  Through the Agreements and the Guaranty, Arthur C. Lee and Kevin J. Lee agreed to be responsible for purchases in their behalf from Coastal.[18] At times material, such purchases were made in their behalf through the Partnership. The Agreements provide that payment for purchased products is due thirty days from the date of purchase.  The Agreements further provide that if payment is not made within thirty days, interest charges will accrue at the rate of one and one-half percent per month.

[26]     Coastal alleges that the Partnership stopped making payments on all their invoices after August 2008.[19]

---

[14] *Id.*
[15] *Id.* ¶¶ 13-14.
[16] *Id.* ¶ 19.
[17] Griffin Aff. ¶ 9.
[18] *Id.* ¶¶ 4-5.
[19] Def. Coastal's Br. Supp. Mot. Summ. J. Countercl. 1.

[27]    Between April and September 2008, Arthur T. Lee, individually, purchased farm products from Coastal.[20]  Arthur T. Lee did not purchase N-TAKE from Coastal in 2008.[21]  Arthur T. Lee stopped making payments on all his invoices with Coastal after September 30, 2008.

[28]    On September 29, 2009, Coastal made demand for payment from the Partnership and Arthur T. Lee.  To date, Plaintiffs have not made payments on their accounts.

[29]    As of September 30, 2010, the total amount due and unpaid to Coastal for sales to the Partnership was $171,921.48.[22]  Of that amount, $6,425.70 was for N-TAKE.[23]

[30]    As of September 30, 2010, the total amount due and unpaid to Coastal for sales to Arthur T. Lee was $41,227.19.[24]

III.

DISCUSSION

A.

Coastal Motion for Summary Judgment

[31]    Coastal argues that it is entitled to summary judgment on its Counterclaim against Plaintiffs for money owed on the past due accounts.

[32]    Plaintiffs respond that because Coastal breached an implied warranty when it sold a defective product (N-TAKE), Plaintiffs should be entitled to offset their

---

[20] *Id.* ¶ 13.
[21] *Id.* ¶ 14.
[22] Suppl. Griffin Aff. ¶ 5.
[23] *Id.* ¶ 3.
[24] *Id.* ¶ 4.

warranty damages from the money owed Coastal on past due accounts.[25] Plaintiffs rely on the Uniform Commercial Code, as codified in North Carolina under G.S. 25-2-717.[26]

[33]  Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that upon the forecast of evidence there exists no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006).

[34]  The court views the evidence in the light most favorable to the nonmoving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733 (1998).

[35]  There is no dispute that Plaintiffs are liable to Coastal for the unpaid amounts owed on open credit accounts. The question before the court is whether Plaintiffs may offset the amount owed on such accounts from their alleged warranty damages arising from their purchase of N-TAKE.

[36]  The court is not persuaded by Plaintiffs' argument for an offset under G.S. 25-2-717. To the contrary, G.S. 25-2-717 provides that "[t]he buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

[37]  Interpreting the plain language of G.S. 25-2-717, any offset permitted can only be applied to debts owed under the contract at issue. *See* G.S. 25-2-717 cmt. 1 ("To bring [2-717] into application the breach involved must be of the same contract under which the price in question is claimed to have been earned."); *see also AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 950 (9th Cir. 2006) ("A

---

[25] April 8 Lee Aff. ¶¶ 11, 14, 15.
[26] Pls. Br. Opp'n Defs. Mot. Partial Summ. J. 1-2.

plain reading of [2-717] indicates that a party may not setoff a contractual claim against a debt on a separate contract.").  "Section 2-717 is not a general set-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer." *ITV Direct, Inc. v. Healthy Solutions, LLC*, 379 F. Supp. 2d 130, 133 (D. Mass. 2005) (internal quotation omitted).

[38]    Consequently, Plaintiffs may not withhold payment for products purchased on their accounts other than N-TAKE.  Under G.S. 25-2-717, Plaintiffs would only be entitled to withhold payment for N-TAKE purchased in 2008, if they ultimately prevail on their Claim for breach of implied warranty.

[39]    Accordingly, the court CONLUDES there exist no genuine issues of material fact as to the amounts Plaintiffs owe Coastal on their accounts for products purchased and received, other than N-TAKE.  As such, the Coastal Motion for Summary Judgment should be GRANTED.

[40]    Coastal is entitled to recover judgment from the Partnership, Arthur C. Lee and Kevin J. Lee, jointly and severally, in the amount of $165,495.78, plus interest on said amount as provided by law.

[41]    Coastal is entitled to recover judgment from Arthur T. Lee in the amount of $41,227.19, plus interest on said amount as provided by law.

B.

Coastal Motion to Dismiss and INTX Motion

[42]    Defendants contend that Arthur T. Lee's claims against them should be dismissed for lack of standing because he did not purchase N-TAKE during the 2008 peanut growing season.[27]

[43]    Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

[44]    When deciding a Rule 12(b)(6) motion, the well pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[45]    A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

[46]    "A motion to dismiss a party's claim for lack of standing is tantamount to a motion to dismiss for failure to state a claim upon which relief can be granted according to Rule 12(b)(6) . . . ."  *Slaughter v. Swicegood*, 162 N.C. App. 457, 464 (2004); *see also Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337 (2000) ("A lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted.").

[47]    A party seeking standing has the burden of proving three necessary elements:

---

[27] Def. Coastal's Br. Supp. Mot. Dismiss Arthur T. Lee 3.

> (1) "injury in fact" – an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 823 (2005) (quoting *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114 (2002)).

[48]    Arthur T. Lee does not have a legally-protected interest with regard to Plaintiffs' Claims.  It is undisputed that Arthur T. Lee did not purchase N-TAKE in 2008. Arthur T. Lee's only purported interest in the underlying Claims is his right to receive twenty percent (20%) of the profit realized on the Partnership's 2008 peanut crop.[28] This purported interest is not sufficient to make Arthur T. Lee a real party in interest with standing to bring this suit.  *See Beachbomber*, 169 N.C. App. at 824 (holding that the plaintiff suffered no injury in fact and lacked standing where it was not a party to the contract in question).

[49]    "[W]hen a claim is only for economic loss . . . the general rule is that privity is required to assert a claim for breach of an implied warranty . . . ."  *Energy Investors*, 351 N.C. at 338; *see also Atl. Coast Mech., Inc. v. Arcardis, Geraghty & Miller of N.C., Inc.*, 175 N.C. App. 339, 346 (2006) ("Privity is still required in an action for breach of implied warranties that seeks recovery for economic loss.").

[50]    Here, Arthur T. Lee's Claims are only for economic loss and he is not in privity with Defendants because he did not purchase N-TAKE.  Absent a claim for personal injury or property damage, Arthur T. Lee must show privity.  *See* G.S. 99B-2.

---

[28] October 5 Lee Aff. ¶¶ 4-5.

[51]     Accordingly, Arthur T. Lee does not have standing to assert his claims against Defendants.  The Coastal Motion to Dismiss and the INTX Motion should be GRANTED.

IV.

CONCLUSION

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

[52]     Coastal's Motion for Summary Judgment on Counterclaim is GRANTED.

[53]     Coastal shall have and recover judgment from the Partnership, Arthur C. Lee and Kevin J. Lee, jointly and severally, in the amount of $165,495.78, plus interest on said amount as provided by law.

[54]     Coastal shall have and recover judgment from Arthur T. Lee in the amount of $41,227.19, plus interest on said amount as provided by law.

[55]     Enforcement of the judgments entered in paragraphs 53 and 54 above shall be STAYED until final disposition of all Claims and Counterclaims in this civil action.

[56]     Coastal's Motion to Dismiss Arthur T. Lee and INTX's Motion for Summary Judgment as to Claims of Plaintiff Arthur T. Lee are GRANTED, for lack of standing. Accordingly, Arthur T. Lee's Claims are DISMISSED.

[57]     If Plaintiffs wish to proceed on their Class Motion, they shall have to and including July 13, 2012, to file a brief in support thereof.  If Plaintiffs fail to file a brief, the Class Motion will be deemed abandoned.

[58]     Defendants shall have to and including August 3, 2012, to file a response brief, if any, as to the Class Motion.

[59]     Plaintiffs shall have to and including August 10, 2012, to file a reply brief, if any, as to the Class Motion.

[60]     On Wednesday, August 15, 2012, beginning at 11:00 a.m. in the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a hearing on Plaintiffs' Class Motion.  At that time, the court will also address any case management issues going forward in this civil action.  On or before Wednesday, August 8, 2012, the parties shall submit a Case Management Report, pursuant to BCR 17.

This the 21st day of June, 2012.